NOTICE
Decision filed 08/11/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 160189

NO. 5-16-0189

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Hardin County. |
| | ) | |
| v. | ) | No. 15-CF-42 |
| | ) | |
| JAMES W. BRINDLEY, | ) | Honorable |
| | ) | Paul W. Lamar, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
Presiding Justice Moore and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, James W. Brindley, was charged with one count of unlawful delivery of a controlled substance within 1000 feet of real property used for religious worship and one count of unlawful drug conspiracy. The defendant filed a motion to suppress a video and audio recording of an alleged drug transaction that the State obtained without judicial authorization. The State maintained that the recording was admissible under section 14-3(q)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/14-3(q)(1) (West 2012)). The circuit court disagreed, granted the defendant's motion to suppress, and barred the State from presenting the audio/video recording.

1

Pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016), the State seeks an interlocutory review of the circuit court's order. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3     In October 2014, Officer Rick Morris was an investigator with the Illinois State Police and was assigned to the Southern Illinois Drug Task Force in Hardin County, Illinois. He was working with a confidential informant in an ongoing narcotics investigation. On October 22, 2014, Morris learned from the confidential informant that the informant could purchase prescription medication from the defendant's wife, Rebecca Brindley. Brindley lived with the defendant. Morris arranged for the confidential informant to make a controlled drug purchase from Brindley. Morris first searched the informant for any contraband and then supplied the informant with money to make the purchase. Morris maintained surveillance of the informant as the informant walked to the Brindley residence, went inside, and returned to Morris with clonazepam tablets. The informant told Morris that Brindley was not home and that the defendant sold the tablets. This was the second controlled narcotics purchase Morris had arranged at this residence; he had arranged a prior purchase at the same residence using the same informant.

¶ 4     On October 28, 2014, the confidential informant told Morris that he could again purchase more prescription medications from the Brindleys the next day. That evening, at 11:37 p.m., Morris sent an e-mail to the Hardin County State's Attorney as follows:

"Re: Overhear request–Brindley

2

The purpose of this email is to request your authorization to conduct a consensual overhear on 10/29/14. The target of the overhear is [Brindley] and [the defendant]. I am making this request based on the following: On 10/15/14 SIDTF agents, using a confidential source, made a purchase of 26 tablets of Clonazepam .5 mg from Rebecca Brindley. On 10/22/14 the same C/S returned and bought nine Clonazepam .5 mg tablets from [the defendant] for $20 USC. On 10/28/14 I was in contact with the same C/S who stated they believed they would be ablet [*sic*] to make a purchase of a controlled substance on 10/29/14. Based on the previous purchases on 10/15/14 and 10/22/14 and the recent information, I believe probable cause exists to believe a felony will be committed by [the defendant] or Rebecca Brindley on 10/29/14."

¶ 5 The next morning at 7:09 a.m., on October 29, 2014, the State's Attorney responded to Morris's e-mail as follows:

"Based on our conversations regarding your efforts with [the defendant] and Ms. Brindley and the information provided to me in the below electronic message, I concur that probable cause exists that a felony will be committed by [the defendant] & Ms. Brindley on October 29, 2014. You have my authorization to use audio/video recording regarding [the defendant] and Rebecca Brindley on October 29, 2014."

¶ 6 After receiving the authorization from the State's Attorney, Morris met with the confidential informant and arranged a third narcotics purchase by the confidential

informant at the Brindleys' residence, this time utilizing a hidden video and audio recording device to record the defendant during the transaction.

¶ 7 Morris did not obtain judicial approval to make the recording. According to Morris, prescription pills are usually obtained on a certain date or period when the prescription can be filled, and they can be gone in a day.

¶ 8 As a result of the recorded transaction, the defendant was charged with one count of unlawful delivery of a controlled substance within 1000 feet of real property used primarily for religious worship (720 ILCS 570/407(b)(2) (West 2012)) and one count of criminal drug conspiracy (720 ILCS 570/405.1 (West 2012)). In response to a discovery request, the State provided the defendant with the video and audio recording.

¶ 9 The defendant filed a motion to suppress the recording pursuant to section 108A-9(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A-9(a) (West 2012)), which provides for the suppression of judicially authorized recorded conversations when (1) the conversation was unlawfully overheard and recorded, (2) the order of authorization or approval under which the device was used or a recording was made was improperly granted, or (3) the recording or interception was not made in conformity with the order of authorization. The defendant alleged that the conversations during the alleged drug transaction were unlawfully overheard and recorded because the State did not obtain judicial authorization for the recording pursuant section 108A-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A-3 (West 2012)), which sets out a procedure for obtaining judicial approval of law enforcement use of an eavesdropping device.

4

¶ 10    The State acknowledged that it did not obtain judicial approval for the overhear, but argued that section 14-3(q)(1) of the Criminal Code (720 ILCS 5/14-3(q)(1) (West 2012)) granted State's Attorneys the power to authorize overhears during police investigations of drug offenses. It maintained that all of the requirements of section 14-3(q)(1) had been met; therefore, the recording was admissible.

¶ 11    The circuit court agreed with the defendant and granted his motion to suppress the recording. The court suppressed the recording because the State did not follow the procedures in section 108A-3, which, the court concluded, required judicial supervision of the officer's use of an eavesdropping device in the present case. The court, therefore, suppressed "[t]he recordings or overhears made on October 29, 2016 [*sic*], of Defendant by Agent Morris" and suppressed "any mention of a recording or overhear by any witness or attorney during testimony or in the presence of the jury."

¶ 12    Following the circuit court's ruling, the State filed a certificate of substantial impairment, alleging that the circuit court's ruling "substantially impaired the State's ability to prosecute this case," and filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016).

¶ 13                                    ANALYSIS

¶ 14    The first issue we must address is the jurisdiction of this court to hear the State's appeal. The defendant argues that we lack jurisdiction to consider the merits of the State's appeal.

¶ 15    Whether the appellate court has jurisdiction to consider an appeal presents a question of law that we review *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11. Also, we

5

note that whether the circuit court's order is appealable here depends solely on the construction of Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016). *People v. Young*, 82 Ill. 2d 234, 239 (1980). The interpretation of a supreme court rule is a question of law reviewable under the *de novo* standard of review. *People v. Drum*, 194 Ill. 2d 485, 488 (2000).

¶ 16   Illinois Supreme Court Rule 604(a)(1) gives reviewing courts jurisdiction to consider the State's appeal from orders suppressing evidence in a criminal case. The supreme court has emphasized that whether an order is appealable under Rule 604(a)(1) is determined by the substantive effect of the order, not its label or the underlying motion. *Id.* at 489. When the circuit court's order solely impacts the means by which the State can present evidence, then the evidence has not been suppressed within the meaning of the rule. *In re K.E.F.*, 235 Ill. 2d 530, 540 (2009).

¶ 17   For example, in *Drum*, the State wanted to admit the prior testimony of two codefendants who indicated that they would not testify at the defendant's trial. *Drum*, 194 Ill. 2d at 491. The trial court barred the use of the prior testimony, and the State appealed. *Id.* The supreme court construed Rule 604(a)(1) to determine whether the court had jurisdiction to consider the appeal. In construing the rule, the court concluded that evidence is "suppressed" within the meaning of the rule when the trial court's order "prevents [the] information from being presented to the fact finder." *Id.* at 492. The court distinguished its decision in *People v. Truitt*, 175 Ill. 2d 148 (1997), *abrogated in part by People v. Miller*, 202 Ill. 2d 328 (2002), where the trial court's order left an avenue open

for admission of the evidence in question, but the State declined to avail itself of that option. *Drum*, 194 Ill. 2d at 492.

¶ 18　In *Truitt*, the State intended to use laboratory reports to prove the content, identity, and weight of a controlled substance pursuant to section 115-15 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-15 (West 1994)), which allowed the State, with certain procedural requisites, to establish lab results solely by means of a lab report, without live testimony from the analyst. *Truitt*, 175 Ill. 2d at 149-50. The trial court held that section 115-15 was unconstitutional, and this ruling required the State to present testimony from the person who actually analyzed the substance in question and prepared the lab report. *Id.* at 150. The State appealed, and the supreme court analyzed its jurisdiction to review the order under Rule 604(a)(1).

¶ 19　In construing Rule 604(a)(1), the *Truitt* court concluded that it had no jurisdiction over the matter because the trial court's order did not have the effect of suppressing evidence. *Id.* at 152-53. The court noted that the order would not prevent any facts or opinions from being presented to the jury. *Id.* at 152. Instead, the sole impact of the order would be on the manner in which those facts and opinions were presented. *Id.* Instead of merely a lab report, the order simply required the State to present testimony from an actual witness who could testify about the laboratory tests and results. *Id.*

¶ 20　Similarly, in *In re K.E.F.*, the State sought to admit a recording of the victim's out-of-court statement, and the trial court indicated it would admit the recording if the State called the victim to the stand and asked her some questions about her statement. *In re K.E.F.*, 235 Ill. 2d at 539. For reasons that the supreme court stated "defy

7

comprehension," the State chose not to ask the victim the necessary questions for the admission of the recording. *Id.* The trial court, therefore, denied the State's motion to admit the recorded statement, and the State filed an interlocutory appeal pursuant to Rule 604(a)(1). *Id.* at 535, 537.

¶ 21 The appellate court dismissed the State's appeal for lack of jurisdiction (*id.* at 537), and the Illinois Supreme Court affirmed (*id.* at 541). The supreme court held that, as in *Truitt*, "admissibility of the evidence in question was a matter entirely within the State's control." *Id.* at 540. The court noted that "the prosecution had the option of presenting live testimony to secure admission of the information it sought to introduce, an option that it declined to pursue." *Id.* The court concluded that "the sole impact of the circuit court's order [was] on the *means* by which the information [was] to be presented" and, thus, it was "not suppression of evidence." (Emphasis in original.) *Id.*

¶ 22 In the present case, the defendant cites *Truitt* and *In re K.E.F.* and argues that the circuit court's order did not have the substantive effect of suppressing evidence, but rather it simply impacted the means by which the State could present the facts depicted in the recording. He argues that instead of being able to play the recording of the alleged drug transaction, the order simply required the State to present testimony from the confidential informant who could testify about the transaction. We disagree with the defendant's argument.

¶ 23 Here, the circuit court excluded a specific item of evidence, *i.e.*, the audio-video recording of the defendant and the confidential informant during the controlled drug purchase. Unlike the lab test results contained in the lab report in *Truitt*, the contents of

8

the recording were not admissible under any other alternative means. There is a fundamental distinction between the overhear recordings that the State sought to admit in the present case from the lab reports the State sought to admit in *Truitt*. In the present case, the suppressed evidence is actual audio-video recording of relevant events as they occurred, capturing the defendant's exact words, demeanor, and visual manifestations at the time he is alleged to have committed the crimes charged. The confidential informant's testimony concerning the same events is not the same evidence. Instead, the confidential informant's testimony would be based on his or her recollection of the events, which may or may not be the same as what is depicted in the recording, as well as the witness's credibility. Therefore, testimony is not a means for presenting the *same* evidence contained on the recording. *Truitt*, therefore, is not applicable. In addition, *In re K.E.F.* is distinguishable. In the present case, under the circuit court's order, the State did not have the means to secure the admission of the recording and declined to pursue that means. See *In re K.E.F.*, 235 Ill. 2d at 540.

¶ 24 The circuit court's order suppressing the overhear recording has the substantive effect of suppressing evidence. Accordingly, the State is entitled to appeal the order under Rule 604(a)(1), and this court has jurisdiction to consider the merits of the appeal.

¶ 25 Turning to the merits of the State's appeal, the State argues that the circuit court erred in suppressing the audio/video recording of the drug transaction. We agree.

¶ 26 Reviewing courts apply a two-part standard to review a trial court's ruling on a motion to suppress. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). A court's findings of fact are reviewed for clear error and will be reversed only if they are against the

9

manifest weight of the evidence. *Id.* The court's ultimate legal ruling as to whether suppression is warranted is reviewed *de novo*. *Id.*

¶ 27   In the present case, there are no disputed factual issues that are relevant to the circuit court's order suppressing the overhear recording. Accordingly, there are no issues before us to which the manifest weight of the evidence standard applies. The issue before us is a legal one: whether a recorded overhear that was approved by a State's Attorney pursuant to section 14-3(q)(1) of the Criminal Code (720 ILCS 5/14-3(q)(1) (West 2012)) is admissible in the prosecution of a drug offense. No constitutional issues are raised with respect to the admissibility of the recording. Accordingly, our analysis of the issue before us is strictly a matter of construing the statute at issue to determine and give effect to the legislature's intent. The construction of a statute is a question of law that is reviewed *de novo*. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 17.

¶ 28   Our task is guided by well-established principles. The primary rule of statutory construction is to give effect to the true intent of the legislature, which is best determined from the statutory language itself without resorting to other aids of construction. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). In fact, it is a cardinal rule of statutory construction that when statutory language is clear and unambiguous, it must be given effect without resort to other aids of interpretation. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 429 (2005). This is true because unambiguous statutes must be enforced as enacted, and a court cannot depart from their plain language by reading into them exceptions, limitations, or conditions that conflict with the clearly expressed

10

legislative intent. *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1150 (2004).

¶ 29   In the present case, as set forth in detail below, the clear and unambiguous language of section 14-3(q)(1) of the Criminal Code, as it was written at the time of the recording at issue, provided that recordings obtained in compliance with the subsection are admissible in the prosecution of drug offenses. Therefore, in the present case, the circuit court improperly suppressed the recording, and we must reverse and remand for further proceedings.

¶ 30   Article 14 of the Criminal Code defines the criminal offense of eavesdropping as well as its exemptions. 720 ILCS 5/14-1 *et seq*. (West 2012); 720 ILCS 5/14-3(q)(3) (West 2012). Under section 14-2(a) of the Criminal Code, a person commits eavesdropping when he uses an eavesdropping device, in a surreptitious manner, for purpose of overhearing or recording a private conversation unless he does so with the consent of all of the parties to the private conversation. 720 ILCS 5/14-2(a) (West 2012).

¶ 31   Section 14-3 of the Criminal Code defines "activities [that] shall be exempt from the provisions of [Article 14 of the Criminal Code]." 720 ILCS 5/14-3 (West 2012). At the time of the recording in the present case, section 14-3(q)(1) provided the following exemption to eavesdropping: "With prior request to and verbal approval of the State's Attorney of the county in which the conversation is anticipated to occur, recording or listening with the aid of an eavesdropping device to a conversation in which a law enforcement officer, or any person acting at the direction of a law enforcement officer, is a party to the conversation and has consented to the conversation being intercepted or

11

recorded in the course of an investigation of a drug offense." 720 ILCS 5/14-3(q)(1) (West 2012). Section 14-3(q)(1) authorized the State's Attorney to grant approval for the overhear "only after determining that reasonable cause exists to believe that a drug offense will be committed by a specified individual or individuals within a designated period of time." *Id.*

¶ 32    Section 14-3(q)(2) defined the minimum requirements for the contents of the officer's request for State's Attorney approval of the overhear, including specific information concerning each individual whom the law enforcement officer believes will commit a drug offense and any other supporting information known by the officer giving rise to reasonable cause to believe that the specified individual will commit a drug offense. 720 ILCS 5/14-3(q)(2) (West 2012). Section 14-3(q)(3)(C) limited the State's Attorney's approval in several ways, including a requirement that the recording must be limited to "a reasonable period of time but in no event longer than 24 consecutive hours." 720 ILCS 5/14-3(q)(3)(C) (West 2012).

¶ 33    In section 14-3(q)(4) the legislature clearly and unambiguously stated that overhears obtained in compliance with section 14-3(q) are admissible in prosecutions for drug offenses. Specifically, at the time of the recording at issue here, section 14-3(q)(4) stated in relevant part:

> "Admissibility of evidence. No part of the contents of any wire, electronic, or oral communication that has been recorded or intercepted as a result of this exception may be received in evidence in any trial, hearing, or other proceeding in or before any court *** *other than in a prosecution of*:

12

*(A) a drug offense*[.]" (Emphasis added.) 720 ILCS 5/14-3(q)(4) (West 2012).

¶ 34 The statute defined a "drug offense" to include "a felony violation of *** the Illinois Controlled Substances Act," which includes the charges the State brought against the defendant in the present case. 720 ILCS 5/14-3(q)(7) (West 2012). Section 14-3(q) also contained a sunset clause which stated that section 14-3(q) was "inoperative on and after January 1, 2015," but that "[n]o conversations intercepted pursuant to *** subsection (q), while operative, shall be inadmissible in a court of law by virtue of the inoperability" of the subsection on January 1, 2015. 720 ILCS 5/14-3(q)(8) (West 2012). Finally, the statute stated that compliance with section 14-3(q) was a prerequisite to the "*admissibility in evidence*" of any communication that has been intercepted as a result of this exception contained in section 14-3(q). (Emphasis added.) 720 ILCS 5/14-3(q)(5) (West 2012).

¶ 35 On appeal, the defendant does not argue that the State failed to comply with any of the requirements of section 14-3(q). Therefore, under the clear and unambiguous terms of section 14-3(q) as it was written by the legislature at the time of the recording at issue, the recording is admissible in the State's prosecution of the defendant for the charged drug offenses. This is the clear intent of the legislature in enacting the then-existing language of section 14-3(q).

¶ 36 In support of the trial court's order suppressing the recording, the defendant cites section 108A-1 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/108A-1 (West 2012)) and argues that the trial court properly suppressed the

recording because the State did not comply with section 108A-1's requirement that it obtain judicial authorization to use an eavesdropping device. The defendant's argument is incorrect.

¶ 37 Article 108A of the Code of Criminal Procedure concerns judicial supervision of the use of eavesdropping devices. 725 ILCS 5/108A-1 to 108A-11 (West 2012). Section 108A-1 states that a State's Attorney may apply to a circuit court judge for authority to use an eavesdropping device by a law enforcement officer where any one party to a conversation to be monitored has consented to such monitoring. 725 ILCS 5/108A-1 (West 2012). Article 108A includes, among other things, the procedures for obtaining judicial approval to use an eavesdropping device, grounds upon which a judge may grant approval, the contents of any order granting the approval, requirements for retaining any recordings, and notice to the parties overheard.

¶ 38 Under the clear and unambiguous language of the two statutes, however, they are each separate and alternative methods for law enforcement to use eavesdropping devices under different circumstances. Each statute contains its own requirements, procedures, and limitations, including specific language discussing the admission of recordings obtained under each respective statutory provision. In the present case, Officer Morris obtained approval for the overhear recording under section 14-3(q) of the Criminal Code, not article 108A of the Code of Criminal Procedure. Therefore, the statutory language of section 14-3(q) of the Criminal Code controls the admissibility of the recording, not article 108A of the Code of Criminal Procedure. Nothing within the language used by the legislature in section 14-3(q) allows us to borrow any of the procedures, restrictions,

14

limitations, or other language contained in article 108A and apply it to section 14-3(q). Such a ruling would violate the well-established principles of statutory construction that we outlined at the beginning of our analysis above.

¶ 39   The defendant argues section 14-3(q)'s only function is to prevent law enforcement from being prosecuted for the crime of eavesdropping. He argues that because an officer is acting at the direction of a State's Attorney, section 14-3(q) would operate to insulate the officer from prosecution and "goes no further than that." However, contrary to the defendant's argument, the clear and unambiguous language of section 14-3(q)(4) expressly provided that recordings obtained under subsection (q) may be "received in evidence" in the prosecution of drug offenses. Accordingly, this argument has no merit. The legislature intended for section 14-3(q) to be a procedure for law enforcement officers to obtain recorded evidence admissible in felony "drug offense" prosecutions upon the authorization of State's Attorneys.

¶ 40   The defendant argues that judicial oversight as set forth in article 108A must apply to all law enforcement use of eavesdropping devices because, if not, State's Attorneys would have broad, unchecked power to make their own probable cause determinations in drug overhears. However, the defendant does not set forth any constitutional analysis to support this argument.[1] He raises an alarm about "unhindered use of eavesdropping devises" by law enforcement "unchecked and unperturbed by troublesome judicial oversight." But with no constitutional argument to consider, we are left only with the task

---

[1]In his brief, the defendant correctly notes that "the constitutionality of one-party consent eavesdropping has long been settled." *United States v. White*, 401 U.S. 745 (1971).

15

of simply interpreting the language of the statute to give effect to the legislature's intent. The well-established principles of statutory interpretation do not allow reviewing courts to alter the clear language or function of a valid statute by weighing-in on the policies underlying the statute and determining whether they are good or bad policies. Accordingly, we decline to do so.

¶ 41 Finally, the defendant incorrectly argues that interpreting section 14-3(q)(1) as "an exception to Section 108A" would constitute a repeal of 108A by implication, which is disfavored and should be avoided. First, we note that we are not interpreting section 14-3(q)(1) to be an "exception to Section 108A." As we stated above, the statutory language of the two statutes establishes that the legislature intended for each statute to be a separate and distinct alternative for law enforcement to obtain authority to use eavesdropping devices under the parameters defined in each respective statute.

¶ 42 Second, the legislature did not repeal article 108A by implication when it enacted section 14-3(q). Repeal by implication occurs when the terms and necessary operation of a later statute are repugnant to and cannot be harmonized with the terms and effect of an earlier statute. *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993). "In such circumstances, the subsequently enacted statute will repeal the former by implication, since it cannot be presumed that the legislature intended to enact laws which are contradictory." *Id.*

¶ 43 Generally, repeals by implication are disfavored. *Id.* "Courts presume that the legislature envisions a consistent body of law when it enacts new legislation." *Id.* Reviewing courts have a duty to "construe *** statutes in a manner which avoids an

16

inconsistency and gives effect to both enactments, where such a construction is reasonably possible." *Id.*

¶ 44    In the present case, applying these principles, it is evident that the legislature did not intend to repeal article 108A by enacting section 14-3(q). The unambiguous terms of the statutes are not inconsistent. Instead, the statutes have different requirements and limitations. The version of section 14-3(q) that was in effect at the time of the recording at issue in the present case allowed the State's Attorney to authorize the use of an eavesdropping device for an overhear for only a limited period of time, 24 hours, and only for a limited type of a criminal investigation, felony drug offense. This language did not contradict the language of article 108A, which authorizes the use of eavesdropping devices in broader categories of criminal investigations (any felony under Illinois law) and allows authorizations for longer time periods (up to 30 days). 725 ILCS 5/108A-1 (West 2012) ("any felony under Illinois law"); 725 ILCS 5/108A-5(b) (West 2012) ("No order entered under this section may authorize or approve the use of any eavesdropping device for any period longer than 30 days.").

¶ 45    Although the clear and unambiguous language of the statutes supports our analysis with respect to the repeal by implication doctrine, we note that the legislative history of section 14-3(q) also supports our conclusion. Section 14-3(q) was added to the Criminal Code when the 97th General Assembly passed House Bill 4081. Pub. Act 97-846 (eff. Jan. 1, 2013). During the House debate on House Bill 4081, the House sponsor of the bill, Representative Zalewski, explained the bill as follows:

"House Bill 4081 allows a law enforcement agency with prior written approval from the local state's attorney to do a limited amount of eavesdropping or overhear, if they have compelling evidence that a crime involving a violation of narcotics law or serious bodily harm is about to occur. This is a very limited exception to our eavesdropping law that it'll only happen when a number of controls are satisfied." 97th Ill. Gen. Assem., House Proceedings, Mar. 30, 2012, at 15 (statements of Representative Zalewski).

¶ 46    Representative Zalewski added, "these are instances where these are late at night instances that happen spontaneously, and *there's a compelling need where to avoid, sort of, bureaucratic waits and do this over the phone and get it done right away*." (Emphasis added.) *Id.* at 18.

¶ 47    During the Senate debate, the Senate sponsor of House Bill 4081, Senator Haine, stated that the bill "provides as an exemption to the eavesdropping prohibitions in Illinois law that, *** with the prior request to and verbal approval of a State's Attorney ***, upon reasonable cause, a police officer may engage in an audio and visual recording of a drug transaction for prosecution purposes." 97th Ill. Gen. Assem., Senate Proceedings, May 22, 2012, at 163 (statements of Senator Haine). Senator Haine added, "This is an initiative of all the police departments and the police chiefs and the sheriffs of Illinois to do something about street corner drug sales, *which cannot be easily monitored with our warrant system* and are the primary source of the street violence which has tragically taken the lives of so many innocent people over the years." (Emphasis added.) *Id.* at 163-64. He stated, "The steps to be taken are, upon reasonable cause, the State's Attorney is

requested to approve a—a conversation which is anticipated to occur and gives verbal approval. He or she may have written approval. *This is because of the fast-moving dynamic of the street*." (Emphasis added.) *Id.* at 166.

¶ 48    This legislative history supports the conclusion that each statute is a separate, distinct, and alternative method that can be utilized by law enforcement to obtain approval for the use of eavesdropping devices. Each statute serves a different purpose, applies under different circumstances, and has different procedures and limitations. Therefore, the statutes are not contradictory. In passing House Bill 4081, the legislature intended to give law enforcement officers a streamlined method for obtaining overhear authorization in limited circumstances during the investigation of drug offenses. Giving effect to the clear and unambiguous language of section 14-3(q), as it was written, to allow the admission of the overhear recording in the prosecution of felony drug offenses does not result in an implied repeal of the broader coverage of article 108A.

¶ 49    Although both parties support their respective arguments with discussions about the legislature's amendments to section 14-3(q) that have occurred since the overhear recording in the present case, our analysis of the issues before us are confined to language of the statute that was in place at the time the recording was made in this case.

¶ 50                            CONCLUSION

¶ 51    For the foregoing reasons, we reverse the order of the circuit court that suppressed the overhear recording and remand for further proceedings consistent with this decision.


¶ 52    Reversed and remanded.

19

2017 IL App (5th) 160189

NO. 5-16-0189

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Hardin County. |
| | ) | |
| v. | ) | No. 15-CF-42 |
| | ) | |
| JAMES W. BRINDLEY, | ) | Honorable |
| | ) | Paul W. Lamar, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed:** August 11, 2017

**Justices:** Honorable David K. Overstreet, J.

Honorable James R. Moore, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

**Attorneys
for
Appellant**

Ralph E. Fowler II, Special Prosecutor, Effingham County
Government Center, 120 West Jefferson, Suite 201, Effingham, IL,
62401; Patrick Delfino, Director, David J. Robinson, Acting Deputy
Director, Kelly M. Stacey, Staff Attorney, Office of the State's
Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2,
P.O. Box 2249, Mt. Vernon, IL 62864

**Attorneys
for
Appellee**

Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
Defender, Ian C. Barnes, Assistant Appellate Defender, Office
of the State Appellate Defender, Fifth Judicial District, 909 Water
Tower Circle, Mt. Vernon, IL 62864