NOTICE

Decision filed 01/08/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 150106

NO. 5-15-0106

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-CM-2404 |
| | ) | |
| PAUL S. SCHNEIDER, | ) | Honorable |
| | ) | David K. Grounds, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Paul S. Schneider, appeals his conviction for attempted unlawful clouding of title (720 ILCS 5/32-13 (West 2012)). The charge was based on a lien the defendant attempted to record, which alleged that a bank owed him $400,000 for two properties he had lost in foreclosure proceedings more than 20 years earlier. He claimed that the bank owed him this debt because its predecessor illegally took the properties from him in court proceedings. On appeal, the defendant contends that (1) the State failed to prove beyond a reasonable doubt that this theory was not recognized as a valid basis for a lien, (2) the evidence was insufficient to prove that he knew that the lien was based on an invalid theory, and (3) reversal is warranted because the court did not fully comply with the requirements of *People v. Zehr*, 103 Ill. 2d 472 (1984), and Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) during *voir dire*. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Two properties owned by the defendant were the subject of foreclosure proceedings in 1990. Although the defendant maintains that he did not have notice of the final hearing in the foreclosure proceedings, he acknowledges that he did have notice that the proceedings were pending. After the court entered judgments of foreclosure, Alton Banking & Trust Company (Alton Banking & Trust) purchased both properties in judicially-approved sales. In 1994, the defendant recorded a document with the Madison County recorder's office, purporting to claim a lien against "all assets owned or held in the name of" Alton Banking & Trust. The defendant claimed in the document that the bank owed him $400,000 due to "the wrongful taking of properties under color of law" in the 1990 foreclosure proceedings. In 1996, criminal charges were filed against the defendant related to the 1994 lien. We note that the statute at issue in this appeal, proscribing unlawful clouding of title, was not enacted until 1997. See Pub. Act 89-682, § 5 (eff. Jan. 1, 1997). It is not clear what offense the defendant was charged with in 1996. In any case, however, that charge was subsequently dropped.

¶ 4     In May 2013, the defendant attempted to record the lien at issue in this appeal. In it, the defendant sought to amend the lien he filed in 1994 to reflect the fact that Alton Banking & Trust was now part of U.S. Bank. He alleged that U.S. Bank owed him $400,000 because its predecessor, Alton Banking & Trust, "wrongfully, illegally[,] and feloniously" took multiple properties from him in court proceedings. He further alleged that Alton Banking & Trust used a contract he signed with it "to falsely convict and defraud" him of two specified properties "in collusion with City of Alton and County of Madison rogue officials." An employee noticed that the lien looked suspicious. She showed it to her supervisor, who contacted the state's attorney's

2

office. The state's attorney subsequently charged the defendant with attempt (unlawful clouding of title) (720 ILCS 5/8-4, 32-13(a) (West 2012)).

¶ 5    The first witness to testify for the State at the defendant's trial was Terianne Edwards, an employee of the Madison County circuit court clerk's office. Edwards described the procedures involved in transferring properties after foreclosure proceedings. She explained that once a foreclosure judgment is entered, the property can be sold. Next, the sale must be approved by the court. Once that happens, a deed is issued, signed by the judge, and recorded. Edwards testified that the defendant in foreclosure proceedings always receives a summons notifying the defendant of the proceedings.

¶ 6    Madison County Deputy Recorder Jackie Barlow also testified for the State. She explained that a lien creates a "cloud" on the title to property because it serves as a notice that a debt on the property is due and owing. She testified that the filing of false or fraudulent liens is a growing problem. In an effort to combat the problem, employees of the recorder's office are trained to recognize suspicious filings. She noted, however, that because approximately 60,000 liens are filed with the recorder's office each year, the office does not have the resources to "police" all such filings. She also noted that many of the safeguards that are now in place to identify potentially fraudulent filings were not in place in 1994, when the defendant recorded his first lien.

¶ 7    Barlow then testified about the defendant's attempt to record the lien at issue in this case. She testified that in May 2013, the defendant presented the lien to another employee of the recorder's office for filing. (We note that the employee no longer works for the recorder's office and did not testify at trial.) The employee thought that the lien looked suspicious, so she brought it to Barlow's attention. Barlow, too, thought the lien appeared suspicious.

3

¶ 8    Asked to explain why she suspected the lien was fraudulent, Barlow noted that the document was not notarized and was not supported by a court judgment awarding the defendant the $400,000 he claimed he was owed. She also noted that the document did not follow the standard format for a lien and that it was uncommon for liens to be filed against banks.

¶ 9    Barlow testified that after reviewing the document, she spoke with the defendant. She told him that she wanted the state's attorney to review the lien to make sure she filed it correctly. She did not confront the defendant with her suspicion that the document was fraudulent because it was the policy of the recorder's office not to do so. She explained that this policy was in place for two reasons—first, it was deemed necessary for the safety of the people who work in the recorder's office, and second, employees who are not attorneys are not able to determine definitively whether suspicious liens are, in fact, fraudulent. Barlow testified that she accepted the defendant's recording fee. Asked why she did so, Barlow explained that she would have recorded the lien if she learned from the state's attorney that it was valid.

¶ 10    Barlow testified that when she told the defendant that someone from the state's attorney's office would look at the lien, he "didn't seem to mind at all." She described the defendant's demeanor as "pleasant" and noted that "he seemed very confident." On cross-examination, defense counsel asked, "So it seemed as though Mr. Schneider believed that document was lawful and legal?" Barlow replied, "I suppose. He didn't seem to mind." Counsel then asked, "And by his demeanor and his actions, it appeared he believed it wasn't [fraudulent]?" Barlow replied, "I assume so."

¶ 11    Barlow testified that it took a few weeks before she heard back from the State's Attorney's office regarding the lien. She testified that during this time, the defendant contacted the recorder's office several times to ask whether the lien had been recorded.

4

¶ 12    Barlow also was asked about the 1994 lien. She acknowledged that the lien was accepted and recorded, but she testified that if it were presented to her now, she would have questioned its validity. Barlow also acknowledged that no action had been taken to remove the 1994 lien in the intervening years. She testified that once a fraudulent lien has been recorded, it can only be removed by court order.

¶ 13    The State admitted into evidence the judgments of foreclosure on the two properties, reports of sale showing that Alton Banking & Trust purchased the two properties, judge's deeds transferring the properties to Alton Banking & Trust, the lien recorded by the defendant in 1994, and the lien he attempted to record in 2013.

¶ 14    After the State rested, the defendant made an oral motion for a directed verdict. He argued that there was no evidence concerning the defendant's knowledge of the law. He noted that Barlow testified that the defendant's demeanor indicated that he thought he was acting lawfully. The court denied the motion.

¶ 15    The defendant testified on his own behalf. He testified that he has worked as a government contractor doing electrical and plumbing work and "all kinds of work." He also testified that he and his family bought "derelict" properties and restored them. He noted that some of these properties were purchased at tax sales.

¶ 16    The defendant testified that he did not receive notice of the final hearing in the 1990 foreclosure proceedings. However, he acknowledged that not only did he have notice of the proceedings, he appeared in court multiple times. He further acknowledged that the court entered a judgment of foreclosure. Asked by defense counsel whether he had an opportunity to present his case before that judgment was entered, the defendant responded, "No, and we demanded a jury trial in the case."

5

¶ 17    The defendant believed that the foreclosure action was a fraudulent act committed against him by Alton Banking & Trust. He explained that it was this belief that led him to record the first lien in 1994. He then stated, "I filed in this court multiple—I've been before multiple judges trying to get a jury trial to prove that we made our payments." The defendant believed the 1994 lien was valid when he filed it. He testified that no one from the recorder's office gave him any indication that the lien appeared suspicious at the time. The defendant further testified that criminal charges were filed against him related to the 1994 lien in 1996. He testified, however, that those charges were dismissed by prosecutors. According to the defendant, the charges were dropped because he proved to prosecutor Michelle Berkel that the lien was valid. The defendant then stated that he was "fairly familiar with the law" because he read about property law. He testified, "Normally, if a person has a bogus document filed, they do a quiet title action. They bring you in, and if your lien is false and unlawful, then you have to pay their attorney fees and you have to sign a release releasing it." The defendant testified that no action to quiet title to the two properties had been filed in this case.

¶ 18    The defendant next testified about the 2013 lien. He explained that at the time he attempted to record it, he believed he had recorded a valid lien against Alton Banking & Trust. He later learned that Alton Banking & Trust was now U.S. Bank. The document he attempted to record in 2013 was intended to amend the 1994 lien.

¶ 19    The defendant testified that he was in contact with attorneys representing U.S. Bank prior to preparing the lien. He explained that they contacted him "because they tried to sell another one of [the Schneiders'] properties." He testified that officials of U.S. Bank "worked these frauds in this circuit court" and that the bank owed the Schneiders more money than they owed the

bank. He did not explain the basis of this debt, however. According to the defendant, he told U.S. Bank's attorneys of his intention to record the lien, and they did not object.

¶ 20      The defendant further testified that he conducted research before drafting the 2013 lien. This research included having discussions with people at the recorder's offices in Madison County, Sangamon County, and Jersey County, as well as reading about liens on the Internet. We note that Jackie Barlow denied that the defendant ever contacted the Madison County recorder's office seeking advice. Asked by counsel whether he believed that the document was a legally valid lien when he attempted to record it, the defendant replied, "I don't only believe it, I know it."

¶ 21      The defendant offered somewhat inconsistent testimony regarding ownership of the two properties after the foreclosure proceedings. At one point, he appeared to acknowledge that U.S. Bank owned the properties, noting that even with his lien, the bank could sell the properties. He went on to explain, "What happens is, if I prove my case, these people, I don't go back and get title from properties they took from me, U.S. Bank National Association has to pay me." On cross-examination, however, the following exchange took place between the prosecutor and the defendant:

> "Q. Is it your testimony today that the 1994 foreclosure [*sic*] didn't actually take away any ownership from Number 9 Frontenac and Lot 11 on East 7th Street?
>
> A. I say it was a fraud perpetrated in court.
>
> Q. Did the foreclosure take property away from you?
>
> A. A fraud can't take property. Judicial deed of fraud."

He later testified that he does not believe that the foreclosure judgments were valid or binding because "a fraudulent legal document isn't a legal document." He acknowledged, however, that

7

after the foreclosure judgments were entered, he did not live on or pay the real estate taxes for either property.

¶ 22    The defendant's wife, Marlene Cox Schneider, also testified for the defendant. Mrs. Schneider testified that she believed the lien her husband attempted to record in 2013 was valid because her husband had explained the law to her. She acknowledged that she and the defendant were aware that there were foreclosure proceedings against them in 1990; however, like the defendant, she claimed that they had no notice of the final hearing. She opined that it was "really suspicious" that they were given no notice of the final hearing when they had been given notice of all other hearings during the proceedings. On cross-examination, Mrs. Schneider was asked whether the properties belonged to her and her husband. She replied, "According to the court, they weren't until we proved to the court that it was fraudulent."

¶ 23    The jury found the defendant guilty. The defendant filed a motion for a new trial. In it, he argued that the evidence was insufficient to prove that he knew his theory was not recognized as valid. He also challenged an evidentiary ruling that is not at issue in this appeal. The court denied the motion, and then moved onto the sentencing hearing. The court sentenced the defendant to 12 months of probation. This appeal followed.

¶ 24                                              II. ANALYSIS

¶ 25    The statute under which the defendant was charged provides that it is unlawful to record or file any document that clouds title to land in Illinois "knowing that the theory upon which the purported cloud on title is based is not recognized as a legitimate legal theory by the courts of this State or of the United States." 720 ILCS 5/32-13(a) (West 2012). The defendant asserts that this statute requires the State to prove both that the lien he attempted to file was based on a theory that was not recognized by law and that he knew that the theory was not recognized by

8

law. He argues that the evidence was insufficient to prove either of these points beyond a reasonable doubt. We disagree.

¶ 26 When reviewing a challenge to the sufficiency of the evidence, this court views all of the evidence in the light most favorable to the prosecution. We then determine whether any reasonable jury could find all of the essential elements of the offense charged beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). We will not reverse a conviction unless the evidence, taken as a whole, is "so unreasonable, improbable, or unsatisfactory" that it creates a reasonable doubt that the defendant is guilty. *Id.* at 115. We note that, although couched in terms of sufficiency of the evidence, some of the defendant's arguments require us to interpret the statute and consider what essential elements the State was required to prove. These are legal questions, which we review *de novo*. See *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 27.

¶ 27 The defendant first argues that the State failed to prove beyond a reasonable doubt that the lien he attempted to file was based on a theory that was not recognized by law. His argument has two components. First, the defendant argues that the State was required to prove that the theory underlying the lien was "not recognized as a legitimate legal theory by any court *in* Illinois or the United States." (Emphasis added.) He notes that the State did not present any evidence to show that the theory was not valid under federal law or the law of other states. Second, the defendant argues that the trial testimony of Terianne Edwards and Jackie Barlow was insufficient to prove beyond a reasonable doubt that the theory on which the defendant's lien was based was not valid in Illinois. This is so, he contends, because both Edwards and Barlow are lay witnesses, not legal experts. He notes that Barlow even acknowledged that she had to rely on communications with the state's attorney's office to determine whether the lien was valid. We reject both contentions.

9

¶ 28     First, we do not read the statute defining the offense to include a requirement that the State prove that the lien is based on a theory that is not valid under the laws of all 50 states. We reach this conclusion based on both the express language of the statute and the fact that the interpretation urged by the defendant would lead to absurd results that are at odds with the purpose of the statute.

¶ 29     As noted previously, the statute, by its express terms, is applicable if the defendant knows that the purported cloud on title is based on a theory that "is not recognized as a legitimate legal theory by the courts *of* this State or *of* the United States." (Emphases added.) 720 ILCS 5/32-13(a) (West 2012). In construing this statute, our task is to effectuate the intention of the legislature, which is best discerned from the express language of the statute itself. *Brindley*, 2017 IL App (5th) 160189, ¶ 28. When a statute is clear and unambiguous, we must enforce it as written. *Id.* The statutory language we have just quoted clearly and unambiguously refers only to "the courts *of* this State"—in other words, Illinois state courts—and "the courts *** *of* the United States"—in other words, federal courts. (Emphases added.) 720 ILCS 5/32-13(a) (West 2012).

¶ 30     Although we need not look beyond this clear statutory language or rely on other aids of statutory construction (*Brindley*, 2017 IL App (5th) 160189, ¶ 28), it is worth noting that we must also presume that the legislature did not intend an absurd or unjust result when it enacted the statute (*People v. Pullen*, 192 Ill. 2d 36, 42 (2000)). It would be absurd to require the State to present the jury with evidence of (or instructions on) the property law of all 50 states.

¶ 31     Moreover, such a requirement would undermine the purpose of the statute. See *Pullen*, 192 Ill. 2d at 42 (explaining that legislative purpose is a relevant consideration). The purpose of the statute making unlawful clouding of title a criminal offense is to deter individuals from using frivolous liens in an effort to harass creditors, courts, and judges. See *Parkway Bank & Trust Co.*

10

*v. Korzen*, 2013 IL App (1st) 130380, ¶¶ 81-82; see also 89th Ill. Gen. Assem., House Proceedings, May 14, 1996, at 79-80. If a lien recorded in Illinois, clouding the title to property located in Illinois, is based on a theory that is not valid under either federal law or Illinois law, that lien will unlawfully cloud the title to the property whether or not the theory is valid in any of the 49 other states. If the theory underlying the lien is valid in Oregon or Louisiana, for example, it would not lessen the impact on the Illinois landholder whose property is the subject of the lien. Yet, under the defendant's interpretation of the statute, the individual recording the lien would escape prosecution. This result would be absurd and unjust and would fly in the face of the legislative purpose behind the statute.

¶ 32    For these reasons, we conclude that the statute applies to any lien based on a theory that is not recognized under Illinois or federal law, regardless of whether the theory is valid in any other states. The State was therefore not required to prove that the defendant's theory for his lien was invalid in all 50 states.

¶ 33    Second, we also reject the defendant's claim that the evidence was insufficient to prove that the theory upon which his lien was based was not valid even under Illinois law. Whether a legal theory is valid is an issue of law, not a question of fact. As such, it is a matter to be resolved by the court rather than the jury. See *People v. Connolly*, 322 Ill. App. 3d 905, 916 (2001) (explaining that the court decides issues of law while the jury resolves questions of fact (citing 725 ILCS 5/115-4(a) (West 1998))).

¶ 34    It is worth noting that the jury in this case was instructed that the State must prove three things to prove the defendant guilty of unlawful clouding of title. It must prove that (1) the defendant intentionally filed or recorded a document with the recorder's office, (2) the document placed a cloud on title to land in Illinois, and (3) the defendant knew that the legal theory on

11

which the cloud on title was based was not recognized as valid by the courts of Illinois or the United States. The jury was not instructed that it must find that the defendant's theory was not valid. While it may have been helpful for jurors to be instructed that the court found the theory underlying the lien to be invalid and why this was so, the parties agreed to the instructions given, and the defendant does not challenge the jury instructions on appeal.

¶ 35    In summary, we find that the statute proscribing the unlawful clouding of title is applicable if the lien is based on a theory that is not valid under federal law or Illinois law, regardless of whether the theory is valid under the laws of any other state. We further find that because the validity of a legal theory is a legal issue to be resolved by the court, the State is not required to provide evidence for the jury on this question. In light of these conclusions, we reject the defendant's claims concerning the sufficiency of the evidence to prove that the theory supporting his lien was in fact not a valid theory.

¶ 36    The defendant next argues that the State's evidence was insufficient to prove beyond a reasonable doubt that he knew that his lien was not based on a valid theory. We disagree.

¶ 37    Where knowledge is an element of an offense, as it is here, it must ordinarily be established by circumstantial evidence. Because knowledge is a mental state, this is usually the only way it *can* be proven. *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 20. An admission by the defendant that he had the requisite knowledge is not necessary. *Id.* However, a conviction based on circumstantial evidence does require proof that is conclusive enough to produce "a reasonable and moral certainty" of the defendant's guilt. *Id.* ¶ 19.

¶ 38    Here, there was ample circumstantial evidence to support the jurors' conclusion that the defendant knew his lien was not supported by a valid legal theory. The defendant testified that he had been in the business of buying and restoring properties, some of which he purchased from

tax sales. He also alleged that he had lost multiple properties through foreclosure proceedings. Thus, he was familiar enough with the process to know that the 1990 foreclosure proceedings would validly terminate his interest in the two properties involved. As noted previously, some of the defendant's testimony indicated that he was, in fact, aware that he had no legal interest in the property. He testified that the lien he attempted to record would not affect U.S. Bank's interest in the properties.

¶ 39    Moreover, the defendant admitted that he had been before the court multiple times, attempting to overturn the result of the foreclosure proceedings. Because he knew that these attempts were not successful, he also knew that courts did not recognize his claim that the foreclosure proceedings were fraudulent. This evidence was sufficient to allow jurors to find that the defendant knew that the claim of fraud underlying his lien was not recognized as valid by federal or Illinois courts.

¶ 40    We acknowledge that the defendant testified that he believed his lien to be valid because he believed that the foreclosed properties were taken from him wrongfully. However, belief is not knowledge. The defendant may have believed that the properties were taken wrongfully due to a conspiracy among various "rogue" government officials and the bank, as he alleged in the lien. He may also have believed that he was entitled to $400,000 from U.S. Bank and a lien against its properties because of this perceived conspiracy. However, the evidence showed that he knew that the courts did not recognize this claim as legitimate.

¶ 41    The evidence the defendant points to in support of his argument does not give rise to a reasonable doubt as to his guilt. For example, he points to Barlow's testimony that she surmised that the defendant believed his lien was valid based on his demeanor. Barlow, however, did not claim to know what the defendant believed or knew about the validity of his lien, and she only

13

indicated that he appeared to believe it was valid in response to leading questions from defense counsel. In addition, the defendant points to his own testimony that he consulted with personnel at three county recorder's offices, attorneys for U.S. Bank, and other experts before filing his lien. Implicit in this testimony is an assertion that these experts advised him that he could lawfully record a lien based on his claim that a bank owed him money because its predecessor conspired with local officials to deprive him of property. This assertion is simply not credible, and jurors were not required to accept it. In addition, anything these individuals may have told the defendant would have been inadmissible hearsay.

¶ 42    The defendant also points to a statement made by the trial court during the sentencing hearing. The defendant was given an opportunity to make a statement in allocution after both attorneys finished presenting their arguments. He acknowledged that such statements were ordinarily a chance for defendants to express remorse. However, he told the court that he did not believe he had committed a crime. He told the court that he was not trying to deprive anyone of their property and argued that he believed the lien was valid. After the defendant finished his statement, the court stated, "There is no question in the court's mind that Mr. Schneider does not *believe* he's violated the law. The difficulty the Court has is that Mr. Schneider has arrived at his own decision as to what the law is." (Emphasis added.)

¶ 43    The defendant argues that the court's statement indicates that the court should have granted his motion for a directed verdict and/or his motion for a new trial on the basis that there was insufficient evidence of the defendant's knowledge. We disagree. For one thing, as we discussed earlier, belief is not the same thing as knowledge. Moreover, the court's statement, apparently made in response to the defendant's statement in allocution, was not a judicial finding that the evidence was insufficient for the jury to find that the defendant knew his theory was not

14

recognized by the courts. Indeed, the court had to reject that very argument in order to deny the defendant's motion for a new trial. We conclude that there was sufficient evidence to support the defendant's conviction.

¶ 44    Finally, the defendant argues that this case must be reversed because the court failed to comply with the requirements of Rule 431(b) during *voir dire*. That rule requires the court to explain the following four principles to prospective jurors: (1) the defendant is presumed to be innocent, (2) the defendant is not required to present any evidence, (3) the State must prove the defendant guilty of the charged offense beyond a reasonable doubt, and (4) because the defendant is not required to testify, jurors may not draw any negative inferences if he decides not to do so. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). These four principles are known as the *Zehr* principles (*Zehr*, 103 Ill. 2d at 477). See *People v. Thompson*, 238 Ill. 2d 598, 606 (2010). The rule further requires the court to provide each juror an opportunity to tell the court whether he or she both understands and accepts each individual principle. *Id.* at 607.

¶ 45    In this case, the court told the prospective jurors that the defendant is presumed innocent, that the State must prove each allegation beyond a reasonable doubt, and that the defendant is not required to present evidence or call witnesses. The court then asked, "Do any of you here have any difficulty with that proposition? If so, please raise your hands." The court went on to address other matters before dividing the prospective jurors into two panels.

¶ 46    The court told the first panel, "I'm going to ask [you], after I state a proposition to you, to each indicate whether you understand and accept that proposition. The first is that the State has the burden of proving the defendant guilty beyond a reasonable doubt." The prospective jurors replied in unison, "Yes." The court continued, stating, "The defendant does not have to present

15

any evidence at all and may rely on the presumption of innocence." The jurors again responded in unison, "Yes."

¶ 47    In addressing the *Zehr* principles with the second panel, the court first explained that "the State has the burden of proving the defendant guilty of the charge beyond a reasonable doubt." The court addressed the first panel member, asking, "Beginning with you, do you accept and can follow that?" Each juror replied individually, "Yes." The court went on to explain, "Next proposition is the defendant does not have to present any evidence at all and may rely instead on the presumption of innocence. Does anyone disagree with that proposition?" The prospective jurors again responded individually, indicating that they did not disagree.

¶ 48    The State concedes that this questioning did not substantially comply with the requirements of *Zehr* and Rule 431(b), and we agree. None of the jurors were told that the defendant is not required to testify, and none of the jurors were asked whether they both understood and accepted the principle that the defendant was presumed innocent. In addition, although the court asked prospective jurors on the second panel whether they disagreed with the proposition that the defendant was not required to present any evidence, these jurors were not asked whether they understood this proposition. As the defendant acknowledges, however, he forfeited review of this issue by failing to object during *voir dire*. See *People v. Belknap*, 2014 IL 117094, ¶ 47. Thus, the question is whether we may consider the *Zehr* error under the plain error doctrine.

¶ 49    Under the plain error doctrine, appellate courts may consider issues that have been forfeited if (1) the evidence is closely balanced, regardless of how serious the error is, or (2) the error is so fundamental that it threatens to undermine the integrity of the judicial process, regardless of how close the evidence is. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). A

court's failure to fully comply with the requirements of Rule 431(b) may be reviewed only under the "closely-balanced" prong of the plain error rule. *People v. Sebby*, 2017 IL 119445, ¶ 52; *Thompson*, 238 Ill. 2d at 615. This is because failure to fully comply with Rule 431(b) does not necessarily result in a jury that is not fair and impartial; as such, it "does not automatically 'render a trial fundamentally unfair.' " *People v. Choate*, 2018 IL App (5th) 150087, ¶ 39 (quoting *Thompson*, 238 Ill. 2d at 611).

¶ 50　　The defendant argues that plain error review is appropriate in this case because the evidence is closely balanced. It is the defendant's burden to persuade this court that the evidence is close enough to warrant plain error review. *Thompson*, 238 Ill. 2d at 613. To do so, he must demonstrate that "the evidence is so closely balanced that 'the error alone severely threatened to tip the scales of justice.' " *Choate*, 2018 IL App (5th) 150087, ¶ 52 (quoting *Sebby*, 2017 IL 119445, ¶ 51). We do not agree with the defendant that the evidence in this case was close enough that the court's failure to fully comply with Rule 431(b) threatened to tip the scales of justice against him.

¶ 51　　In support of his contention that the evidence in this case was closely balanced, the defendant essentially repeats much of his argument concerning the sufficiency of the evidence. Although we have already rejected that claim, we must stress that the question of whether evidence is closely balanced is not the same as the question of whether the evidence is sufficient to support a conviction. *Piatkowski*, 225 Ill. 2d at 566. Evidence that is sufficient to support a conviction may still be closely balanced. See *People v. Deberry*, 46 Ill. App. 3d 719, 721 (1977).

¶ 52　　In this case, however, we do not find the evidence to be closely balanced. As we emphasized earlier, the defendant admitted that he had gone before the court multiple times, attempting to argue that the foreclosure judgment was based on fraud and that he had not been

given an opportunity to prove that he had made the payments on the properties. The defendant unquestionably knew that these claims—which were the basis of his assertion that U.S. Bank owed him $400,000—had been rejected. In the face of this evidence, we find it highly unlikely that the court's incomplete questioning under Rule 431(b) in any way contributed to the jury's verdict. We conclude that the evidence was not so closely balanced that it threatened to tip the scales against the defendant. As such, we will not apply the plain error doctrine to the defendant's claim of error.

¶ 53                                    III. CONCLUSION

¶ 54    For the foregoing reasons, we affirm the defendant's conviction.

¶ 55    Affirmed.

2019 IL App (5th) 150106

NO. 5-15-0106

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-CM-2404 |
| | ) | |
| PAUL S. SCHNEIDER, | ) | Honorable |
| | ) | David K. Grounds, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**  **January 8, 2019**

---

**Justices:**   Honorable Melissa A. Chapman, J.

Honorable David K. Overstreet, P.J., and
Honorable Thomas M. Welch, J.

---

**Attorneys**   Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
**for**   Defender, Ian C. Barnes, Assistant Appellate Defender, Office of the
**Appellant**   State Appellate Defender, Fifth Judicial District, 909 Water Tower
Circle, Mt. Vernon, IL 62864

---

**Attorneys**   Hon. Thomas D. Gibbons, State's Attorney, Madison County
**for**   Courthouse, 157 N. Main Street, Suite 402, Edwardsville, IL 62025;
**Appellee**   Patrick Delfino, Director, Patrick D. Daly, Deputy Director, Jennifer
Camden, Staff Attorney, Office of the State's Attorneys Appellate
Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
Vernon, IL 62864

---