(No. 107402.—

*In re* K.E.F., a Minor (The People of the State of Illinois, Appellant, v. K.E.F., Appellee).

*Opinion filed December 17, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Thomas J. Brown, State's Attorney, of Pontiac (Michael A. Scodro, Solicitor General, and Michael M. Glick and Sheri L. Wong, Assistant Attorneys General, of Chicago, and Patrick Delfino, Robert J. Biderman and Denise M. Ambrose, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Gary R. Peterson, Deputy Defender, and Jacqueline L. Bullard, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

## OPINION

The issue presented for our consideration, as framed by the appellant, the People of the State of Illinois, is whether the State "may file an interlocutory appeal from a mid-trial order that suppresses evidence or has the substantive effect of terminating the prosecution in a juvenile delinquency proceeding." Because we find that the circuit court's order does not suppress evidence within the meaning of Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)), we need not address whether Rule 604(a)(1) applies in this context.

### BACKGROUND

In August of 2006, a delinquency petition was filed in the circuit court of Livingston County alleging that

respondent, K.E.F., was a delinquent minor in that he had committed unlawful restraint and various sexual offenses against his sister, K.M.F. Prior to the adjudicatory hearing, the State, pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 2006)), sought a ruling on the admissibility of statements K.M.F. had made during an interview on April 26, 2006, with Ellen Joann Sipes, a forensic interviewer at the Livingston County Advocacy Center. At the section 115—10 hearing, Sipes testified and the State introduced the DVD of the interview for the court's consideration. The court found the statements were sufficiently reliable to allow their admission as evidence at the adjudicatory hearing "assuming the other provisions of section 115—10 are satisfied."

The adjudicatory hearing was held on August 29, 2007. The State called 11-year-old K.M.F. as its first witness. However, the State did not question K.M.F. about the events underlying its charges, and instead limited its inquiry to the circumstances surrounding the videotaped statement K.M.F. had given to Sipes. Moreover, the State did not even question K.M.F. about the content of her statement, eliciting only her testimony that she spoke with Sipes around April of the previous year and she answered Sipes' questions truthfully. Given the limited scope of the State's questioning, the attorneys for respondent and his parents restricted their abbreviated questioning to the circumstances surrounding the statement, rather than the substance of the statement itself. Thereafter, the State moved to admit the recorded statement.

Opposing counsel objected, noting that K.M.F. had not testified regarding the circumstances giving rise to the delinquency petition. Counsel for respondent noted:

"[T]he use of [section 115—10] under this provision requires that the minor testify at the proceeding or be unavailable. The State has presented her, has asked her

nothing about the events, the allegations of \*\*\* the petition, and now desires to in place of her testimony present the video.

I would suggest that testifies at the proceeding would mean more than identifying herself the victim and asserting that yes, she does remember talking to Jo Sipes back in April and that she told her the truth at that time.

I suggest what this does is this makes her unavailable for cross examination. We cannot cross examine her from the State's examination of her because the State did not question her about any of the incidents involved."

Counsel for respondent's parents added:

"I don't believe that the child has meaningfully testified within the satisfaction or meaning of [the statute's] language when she gets up and incorporates or adopts a prior statement that's unsworn and not subject to cross examination. I think it's a nice little stratagem by the State to try to get around us being able to cross examine the child about the substance of that statement."

In response, the prosecutor stated:

"I would argue the purpose of the act itself to allow such statements in there is so that, these videotaped statements is [*sic*] for the protection of the minor so she does not have to recall the events that perpetrated this. \*\*\* The purpose of the statute is to protect the child of having to go through the riggers [*sic*] of a full blown court hearing."

Continuing, the prosecutor argued that K.M.F. *had* testified and that she was available for cross-examination. He suggested he would not have objected had opposing counsel asked questions beyond the scope of his direct examination. The prosecutor concluded: "The defense has had their opportunity to cross examine [K.M.F.]. Just because they didn't exercise it doesn't mean I'm bound by that."

Counsel for respondent countered:

"Yes, she has literally gotten up there, answered questions under oath. But not one of them, not any of that has had anything to do with the allegations of the complaint. [I]t just makes a travesty of the whole judicial system. \*\*\*

She just remembers making a statement. There wasn't even any testimony as to what the statement involved, whether it was even related to the allegations of the petition."

Counsel for respondent's parents added, *inter alia*:

"Puts us in the position of having to cross examine and to put [K.M.F.] in a position of having to repeat the very thing that [the prosecutor] says the statute is designed to protect. We are the ones who has [*sic*] to become the one doing his job for him to meet his burden of proof."

The court observed that the prosecutor had not asked K.M.F. about the allegations in the petition "so there was nothing to confront her about." Despite the prosecutor's insistence that he had made "the victim available to testify, available for cross examination, available to be confronted by the defense," the court denied his motion to admit the DVD of K.M.F.'s out-of-court statement.

The prosecutor then expressed his desire to pursue an interlocutory appeal. Counsel for respondent objected, stating: "It's not as if they are being prohibited, it's not a ruling that prevents them from making their case. *** They have the live witness." A debate then ensued as to whether the State could take an interlocutory appeal from the ruling. The original prosecutor, Assistant State's Attorney Kevin Sanborn, was, for that argument, largely supplanted by another assistant State's Attorney, Carey Luckman. In the course of that discussion, the court asked Luckman if the basis for an appeal would be that the charge was effectively dismissed as a result of the ruling. Luckman responded, "No," explaining that the basis for the appeal would be that the court's ruling had the "substantive effect" of "suppressing evidence."

The court then stated:

"I don't know why we're going through this song and dance; and you can educate me all you want; but [the witness] is here. Get her up here. Have her say I don't have a clue what you're talking about, admit the tape, or have her say this is what happened, admit the tape. Why are we doing this? The tape can come in if she testifies she doesn't

know anything about the tape or she doesn't, sorry, I don't remember the details that day. The tape comes in. Yes, I do remember the details that day. Right? It comes in for impeachment."

Luckman conceded: "It may come in if she testifies. It may come in if she doesn't. I think it probably comes in either way given her age." The court agreed: "That's my point. So why are we doing all of this legal maneuvering if we've got her here to testify?" To that, Luckman responded: "I'm not the trial attorney. I'm informing the Court I believe of what the legal basis is for the trial attorney's election to proceed in at least a fashion of an interlocutory appeal because the State got an unfavorable ruling on the admissibility of the recording."

Addressing the court, counsel for respondent observed: "I don't believe you are suppressing the evidence. You've just told the State they can't introduce it the way they want to. Mr. Sanborn has adopted a particular trial strategy. *** For whatever reason, he doesn't want to change his strategy to a way that would *** allow the video or that would bring the video in." Counsel for the parents echoed that observation: "[I]t's the election of the State that creates the issue. They want to bring in evidence in the way they want to bring it in. *** I don't think that it's a matter that you say if you don't let me bring it in just the way I want I believe I'm substantially impaired so I should be able to do an immediate appeal of this ruling. It's an election on their part to present their case in a certain way. The Court already ruled; and whether we disagree or not, that tape would come in based on the availability of the witness."

Luckman, in response, reiterated his argument that opposing counsel had the opportunity to cross-examine the witness and chose not to do so, suggesting that they were using the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), as "a sword instead of a shield," forgoing

the opportunity they had to cross-examine K.M.F. Luckman called the respondent's allegations concerning a *Crawford* violation a "legally disingenuous argument." Sanborn, too, reiterated his position that opposing counsel had the right to cross-examine K.M.F. and chose not to. Sanborn again clarified the State's basis for an interlocutory appeal: "Your ruling not allowing me to enter in People's 1A as evidence is suppression of that evidence."

Shortly thereafter, the circuit court stated it was allowing the interlocutory appeal from "an order or judgment the substantive effect of which results in suppressing evidence." Before the hearing concluded, Luckman noted that one of the things the appellate court would consider on appeal was whether the ruling was in fact one suppressing evidence.

In the appellate court, the respondent filed a motion to dismiss the appeal for lack of jurisdiction, arguing that Supreme Court Rule 604(a)(1) does not authorize an interlocutory appeal in a delinquency proceeding. On September 15, 2008, the appellate court entered an order granting respondent's motion to dismiss for lack of jurisdiction. We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

The threshold question to be considered here is whether the trial court's ruling is appealable under Rule 604(a)(1)—at all. In a *criminal* prosecution, the State may, under Rule 604(a)(1), obtain review of an order that suppresses evidence where the State certifies that the suppression substantially impairs the State's ability to prosecute the case. *People v. Truitt*, 175 Ill. 2d 148, 151-52 (1997); *People v. Young*, 82 Ill. 2d 234, 247 (1980). However, as this court observed in *Truitt*: "Before that principle even comes into play *** the order must, in fact, be one that suppresses evidence." *Truitt*, 175 Ill. 2d

at 152. In making that determination, we do not defer to the parties or the circuit court. As in all matters affecting this court's jurisdiction, we make our own assessment, looking at the substantive effect of the order rather than its form. See *People v. Drum*, 194 Ill. 2d 485, 489-90 (2000); *Truitt*, 175 Ill. 2d 148; *People v. Phipps*, 83 Ill. 2d 87, 90-91 (1980).

In *Drum*, where the State sought, unsuccessfully, to admit the prior testimony of two witnesses who indicated they would not testify at defendant's trial, this court determined, "Substantively, the trial court's order bars the use of this testimony at defendant's trial, regardless of whether the order is characterized as 'excluding' the testimony or 'suppressing' it." *Drum*, 194 Ill. 2d at 491. The court concluded that evidence is "suppressed" within the meaning of Rule 604(a)(1) when the trial court's order "prevents [the] information from being presented to the fact finder." *Drum*, 194 Ill. 2d at 492. This court, in *Drum*, distinguished *Truitt*, where the trial court's ruling left an avenue open for admission of the evidence in question, *i.e.*, live testimony, but the State declined to avail itself of that option. The *Drum* court stated:

> "This court in *Truitt* concluded that the State could not appeal from a pretrial order regarding how it would be required to prove that certain material was an illegal controlled substance. The *Truitt* court reasoned that the pretrial order did not prevent any information from being presented to the jury. Rather, the sole impact of the order was on the means by which that information was presented. *Truitt*, 175 Ill. 2d at 152." *Drum*, 194 Ill. 2d at 492.

In *Truitt*, the State had attempted to prove up its controlled substance case by recourse to section 115—15 of the Code (725 ILCS 5/115—15 (West 1994) (allowing the State, with certain procedural requisites, to establish lab results solely by means of a lab report, without live testimony from the analyst) (later held unconstitutional

in *People v. McClanahan*, 191 Ill. 2d 127 (2000))). The trial court in *Truitt* rendered a seemingly prescient ruling, declaring the statute unconstitutional, a ruling that meant the State could not avoid presenting live testimony from the person who actually analyzed the substance in question and who prepared the report. *Truitt*, 175 Ill. 2d at 150. The State sought an appeal directly to this court, ultimately resting its claim of jurisdiction on Rule 604(a)(1). This court concluded that it had no jurisdiction over the matter because the circuit court's order did not have the effect of suppressing evidence:

"The order will not prevent any facts or opinions from being presented to the jury. From the record before us, it appears that its sole impact will be on the manner in which those facts and opinions are presented. Instead of being able to rely on a piece of paper, the State will have to present testimony from an actual witness. There is no way this can reasonably be viewed as a suppression. To the contrary, because the witness will be subject to cross-examination, the jury will almost certainly end up receiving a much more thorough explanation of the pertinent facts than the document alone could ever provide. In this sense, the circuit court's ruling may actually have the opposite effect of a suppression order." *Truitt*, 175 Ill. 2d at 152.

Here, the State chose—for reasons that quite frankly defy comprehension—to attempt to gain admission of a prior statement that the trial court had already ruled reliable and admissible—"assuming the other provisions of section 115—10 are satisfied"—by calling the alleged victim to the stand and asking her only whether she had previously answered Sipes' questions truthfully. The prosecutor did not even inquire as to the nature of the questions answered in the statement. The State declined to question K.M.F. about the substance of the allegations in the statement or the delinquency petition for the professed reason that she would "not have to recall the events that perpetrated this." However, inexplicably and

illogically, the prosecutor declared his willingness to subject K.M.F. to whatever examination opposing counsel were inclined to conduct on those very subjects. The trial court indicated it would admit the statement under various scenarios, so long as the prosecutor questioned K.M.F. about the pertinent events, irrespective of her answers, but the prosecutor was steadfast in his refusal and in his desire to pursue an interlocutory appeal.

We question the wisdom of that course of action, but we have no doubt that this situation falls squarely within the holding of *Truitt*. As in *Truitt*, and unlike the circumstances in *Drum*, admissibility of the evidence in question was a matter entirely within the State's control. As in *Truitt*, the prosecution had the option of presenting live testimony to secure admission of the information it sought to introduce, an option that it declined to pursue. It seems clear to us that, as in *Truitt*, the sole impact of the circuit court's order is on the *means* by which the information is to be presented. That is not suppression of evidence.

Here, the trial court encouraged the State to ask the witness questions pertinent to the allegations of the petition, stating outright, if the State did so, it would allow the recorded statement in as evidence irrespective of the witness's answers. Whether that ruling would pass muster under our recent holding in *In re Rolandis G.*, 232 Ill. 2d 13 (2008), is irrelevant. The substantive effect of the trial court's ruling is the pertinent issue, not its correctness; and, as indicated, the effect of the ruling was not to suppress evidence.

In light of our holding in *Truitt*, which we deem applicable under these circumstances, we find it unnecessary to discuss cited authority from other jurisdictions construing their statutes.

Since the trial court's order did not have the substantive effect of suppressing evidence, we conclude that the

circuit court's order is not appealable under Rule 604(a)(1) and this cause must be dismissed for lack of jurisdiction. While the basis for our dismissal may or may not differ from that upon which the appellate court relied—the appellate court did not explain the basis for its dismissal—we note we are not bound by the appellate court's reasoning in any event and may affirm for any basis presented in the record. *Tri-G., Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 258 (2006).

In light of our holding and disposition, it is not necessary to decide whether Rule 604(a)(1) applies in the context of delinquency proceedings. Consequently, we do not reach that issue. As a general rule, this court does not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009); *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990).

## CONCLUSION

For the foregoing reasons, we affirm the appellate court's dismissal of this cause for lack of jurisdiction.

*Appellate court affirmed; appeal dismissed.*

JUSTICE BURKE, dissenting:

In this juvenile delinquency proceeding the circuit court granted the State's request to file an interlocutory appeal under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604) from an order that purported to suppress certain recorded statements. The respondent filed a motion to dismiss the appeal in the appellate court. The only argument raised in the motion was that Rule 604(a)(1) did not authorize the State to pursue an interlocutory appeal from an order suppressing evidence in a juvenile delinquency proceeding. The appellate court granted respondent's motion and dismissed the appeal in a two-sentence order.

The State thereafter filed a petition for leave to appeal in this court. In its petition, the State argued that "[t]his court should grant review because the appellate court's dismissal conflicts with *People v. Martin*, 67 Ill. 2d 462 (1977), holding that Supreme Court Rule 604(a)(1) applies to interlocutory orders entered in juvenile delinquency proceedings and frustrates the stated goal of the Juvenile Justice Reform Provisions of 1988." The respondent filed an answer to the State's petition. The respondent argued only that this court should deny the State's petition for leave to appeal because the plain language of Rule 604(a)(1) does not allow for interlocutory appeals from evidentiary rulings in delinquency cases and because public policy does not require such appeals. We granted the State's petition for leave to appeal.

The sole issue that formed the basis of the appellate court's order and the State's petition for leave to appeal is whether Supreme Court Rule 604(a)(1) applies in juvenile delinquency proceedings. Instead of addressing this issue, however, the majority resolves this case on another ground: that the circuit court's order in this case did not, in fact, suppress evidence. Citing to *People v. Truitt*, 175 Ill. 2d 148, 151-52 (1997), the majority reasons that determining the nature of the order entered by the circuit court in this case is the "threshold question" that must of necessity be answered first in order to establish our jurisdiction to hear the appeal. 235 Ill. 2d at 537. Having decided that the circuit court's order did not suppress evidence, the majority then declines to address whether Rule 604(a)(1) applies in juvenile delinquency proceedings. 235 Ill. 2d at 541. I disagree with the majority's reasoning.

*Truitt* was a criminal case. There is no question that Rule 604(a)(1) applies in criminal cases. Accordingly, the only "threshold question" to be decided in a criminal appeal brought under Rule 604(a)(1) is whether the order

at issue actually suppresses evidence—there is no other threshold question to resolve. But that is not true in this case. The parties disagree as to whether Rule 604(a)(1) even applies in juvenile delinquency proceedings. Answering that question is part of the analysis necessary to establish our jurisdiction. *Truitt* does not address the situation presented in this case and it certainly does not mandate that we resolve the nature of the circuit court's order before deciding whether Rule 604(a)(1) applies in juvenile delinquency proceedings.

In my view, the majority has put the cart before the horse. Why decide a factual question regarding the circuit court's order when we do not even know what principle of law applies? There is no reason of law or policy to avoid answering whether Rule 604(a)(1) applies in juvenile delinquency proceedings. And there is little point in reaching a decision which is limited to the facts of this case when the issue of broader public importance goes unanswered. The issue of whether Rule 604(a)(1) applies in juvenile delinquency proceedings was important enough to grant the State's petition for leave to appeal and should be addressed by the court. Because the majority does not do so, I dissent.

JUSTICE FREEMAN joins in this dissent.