2021 IL App (2d) 200146
No. 2-20-0146
Order filed April 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | 18-CF-1410 |
| VARGHESE PHILIP, | ) ) | Honorable George D. Strickland, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) We have jurisdiction over the State's appeal from the trial court's grant of the defendant's motion *in limine*; that order qualified as a suppression order because it barred the State from presenting lay testimony about the victim's day-by-day recovery from a physical attack or her current impairments.   (2) On the merits, we (a) modify the order to permit the State to question the victim about any memory impairment she experiences while testifying; and (b) otherwise affirm the order due to the risk of unfair prejudice from the lay testimony.

¶ 2   This is the State's appeal of an evidentiary ruling barring certain testimony from the attempted-murder trial of defendant, Varghese Philip.   See 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018).   The State contends that the trial court abused its discretion when it barred the State from

calling one of its intended witnesses and limited other testimony. Defendant contends, among other things, that, because the ruling did not amount to a suppression of evidence, we lack jurisdiction to consider the appeal under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017). We hold that the trial court's ruling did have the effect of suppressing evidence and thus we have jurisdiction. On the merits, we conclude that the core of the evidentiary ruling was not an abuse of discretion but that aspects of it would unreasonably limit the State's ability to question the victim, Anumol Anterson, about her current disabilities. We, therefore, affirm as modified and remand the cause.

¶ 3                                    I. BACKGROUND

¶ 4      A grand jury indicted defendant on multiple counts related to a physical attack on Anterson on June 21, 2018. Counts I and II charged attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018)). Count I alleged that defendant stabbed Anterson about the head with intent to kill, and count II alleged that defendant kicked Anterson about the head with intent to kill. The remaining counts charged aggravated battery (720 ILCS 5/12-3.05(a)(1), (f)(1), 5/12-3 (West 2018)).

¶ 5      Before the scheduled jury trial date, the State nolle-prossed the aggravated battery counts. Both sides filed motions *in limine*; in relevant part, defendant sought to bar the State "from referencing or eliciting testimony regarding the extent and nature of *** Ms. Anterson's physical recovery as a result of her injuries, including but not limited to her course of treatment in physical, speech, or occupational therapy." Defendant argued that such testimony would be irrelevant and that any probative value would be "outweighed by the danger of unfair prejudice to the Defendant." The court granted the motion, ruling that the State's evidence of the extent of the victim's injuries must be limited to what was learned in the first days of her hospitalization:

"The Court agrees that the nature and the extent of the injuries is a relevant factor. However, regarding the issue of what the defendant's intent was, that is somewhat more of a limited issue. I imagine the State will attempt to show what the defendant's intent was by showing what he did, which is obviously the most probative thing. The nature and the extent of the injuries in addition are relevant because they *** may fortify the actions the defendant is accused of making and taking."

However, the Court does not find that going further than the diagnosis of her injury and the length of her being in a coma is relevant and I am going to bar that. So you can go into her diagnoses at the hospital, photographs of the injuries, the fact she was in a coma."

¶ 6 The State moved for reconsideration, arguing that the court's ruling would prevent it from establishing the degree of injury suffered by Anterson. It made the following offer of proof:

"a. The People would call [Anterson]. *** The People allege that the defendant stabbed Ms. Anterson in the head with a utility knife as well as repeatedly stomped on her head while she was lying on the ground. As a result, Ms. Anterson's memory was impaired as to what happened to her, where she was treated for her injuries, and her physical state and recovery the months after the attack. She could not remember Condell [Medical Center in Libertyville, Illinois], her children[, or] much of the attack. She is able to testify as [to] her current condition as a result of this attack.

b. The People would call Debra Miller. Debra Miller is a Social Worker employed with Condell Medical Center ***. Ms. Miller would testify that she met Ms. Anterson while [Anterson was a patient] at Condell Hospital. Ms. Miller would testify that Ms. Anterson spent approximately one month at Condell, a brief time at Lutheran General

Hospital and approximately 8-12 [*sic*] at Warren Barr Rehabilitative Center. Ms. Miller observed that while Ms. Anterson was a[t] Condell Hospital she was non-verbal as a result of the attack. Ms. Miller would testify that [Anterson's] memory as well as her walk was impaired as a result of this attack. Ms. Miller would testify that Ms. Anterson received occupational therapy, physical therapy and speech therapy during her entire course of treatment.

c. The People would call Dr. Scott Otto. Dr. Otto is a trauma surgeon who treated Ms. Anterson in the emergency room and during her entire stay at Condell. Dr. Otto would testify that while he did not observe[ ] any abnormalities in [Anterson's] CAT scan, Ms. Anterson's injuries that he observed during her entire stay at Condell aided in his diagnosis that she had a traumatic brain injury."

The State told the court that it intended to call Miller as a lay witness; Dr. Otto would be qualified as an expert.

¶ 7    The court granted the motion to reconsider to the extent of ruling that the State could ask Dr. Otto to address anything on which he relied in reaching his diagnosis of the degree of injury:

"[The court recognizes that i]t's a case by case basis as to the nature of the injuries, how much they do shine on intent. It sounds like the State has an argument that this victim was stabbed in the face and stomped on to the extent that she was in a coma for a brief period of time. Matter was extruded from her head. She had to be intubated.

Those are all obviously relevant things, keeping in mind once again in this case, [bodily harm] is not an issue.

* * *

Now, the only thing that I have heard today that in any way causes me to consider slightly enlarging that is if you wish to have the doctor testify based on the head injury that it was a significant or traumatic brain injury based on my observations of her in the emergency room and on later observations, I will allow you to do that.

The defense [*sic*] attempts to say the later observations go into those, then that's fine; but the picture that has been painted to me of day by day of her learning how to do certain acts again, once again it's not part of the indictment in this case; and it is my discretion to determine how relevant it is.

So, you will be allowed to have the doctor testify. If his findings are grievous or traumatic brain injury, you can have your doctor testify to that; and *** [if] part of that diagnosis was based on subsequent events, I'll allow you to do that; but dwelling on the day-by-day nature of her recovery is not relevant, and that's what my ruling is."

¶ 8    The State stated its intent to file a certificate of impairment. This prompted a colloquy in which the State further detailed Miller's expected testimony and the court further explained its ruling. According to the State:

"[Miller] is the one that provides much of that evidence of [Anterson's] sort of day to day [*sic*] and how badly hurt she was.

Again, severity of the injury *** goes to *** the major part of our intent to kill. So, she is testifying to *** where [Anterson] can't even walk when she first comes in. She is nonverbal. She walks into walls. She has to be assisted. She can't remember her children. *** [T]o this day [she] has no memory of ever being in Condell. She can only remember part of the attack.

All of this is stuff that's coming out afterwards, but all of that is explaining the severity of the injuries, and these facts *** from [Anterson] herself or from the social worker, just goes to show how badly she was hurt.

*** When [Anterson] was in [a different facility], *** Miller still continued to work with her some there. She has had *** language problems [throughout].

Even when she becomes verbal, she still has [difficulty with] time and still to some extent *** with staying with one language while she is talking. All of this stuff goes to explain both the severity, above and beyond Dr. Otto's diagnosis, the severity of the injury that [Anterson] suffered at the hands and feet of the Defendant, and as we argued earlier today, also goes to show what's happening to her now, why she is the way she is now when she's sitting up there."

¶ 9    The court advised the State that it would be permitted to address the victim's current condition if the defense "attempts to go into why she is not having good memory here." The State responded that it understood that it was permitted to elicit such testimony if the defense opened the door, but that it wanted to be able to address "the jury sitting here and watching her testify." The court countered that the State was merely seeking another way to bring in evidence of "how much [the victim] suffered," and reasserted that such evidence was not appropriate.

¶ 10    After this colloquy, the State filed its certificate of impairment under Rule 604(a)(1). The certificate cited "the Court's Order of February 18, 2020, granting in part the defendant's motion *in limine*, and having the effect of suppressing evidence." The notice of appeal stated that the "nature of the order appealed from" was a "[r]uling on defendant's 'Defense Motion *in Limine*.' "

¶ 11                                II. ANALYSIS

¶ 12    A. Whether the Order from Which the State Appeals Included a Provision Limiting the `
Victim's Testimony

¶ 13    At the outset, we must resolve a disagreement between the parties over the scope of the court's ruling.    The State contends that, not only did the trial court bar Miller from testifying, it "precluded even the victim from testifying as to her lack of memory unless defense counsel opened the door."    Defendant argues that the ruling at issue in this appeal is the trial court's partial grant of his motion *in limine*, the substance of which was, according to defendant, a bar on the State's presenting Miller's "observations about the victim's progress during her rehabilitation." Defendant thus contends that "[t]here is no order preventing the State from presenting evidence of the victim's memory as the State indicates"; "[t]hat was not part of the motion *in limine* the court partially granted."

¶ 14    We conclude that the trial court's modified ruling on the motion *in limine* extended to the State's comments on the victim's testimony.    In ruling on the State's motion to reconsider, the trial court told the State that it was permitted to address the victim's current condition only if the defense "attempt[ed] to go into why she is not having good memory here."    This ruling thus became part of the ruling on the motion *in limine*.    Therefore, defendant is incorrect that the court's ruling on the motion *in limine* did not also restrict the defense's examination of the victim.

¶ 15            B. Whether We Have Jurisdiction of this Appeal under
                 Rule 604(a)(1)as an Appeal from an Order Suppressing Evidence

¶ 16    We consider our jurisdiction over this appeal before we address its merits.    Defendant argues that the exclusion of Miller's testimony did not amount to complete suppression of evidence but only restricted how the State could introduce certain evidence.    Defendant thus contends that we lack jurisdiction over this appeal under Rule 604(a)(1), which extends to "order[s] or judgment[s] the substantive effect of which results in *** suppressing evidence" (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017)), but not to evidentiary rulings in general (*People v. Flatt*, 82 Ill. 2d 250, 258 (1980)).

¶ 17     We conclude that the trial court effectively suppressed evidence when it barred Miler's testimony and restricted the victim's testimony.   When the State brings an appeal under Rule 604(a)(1), the "threshold question *** is whether the trial court's ruling is appealable under Rule 604(a)(1)—at all."   *In re K.E.F.*, 235 Ill. 2d 530, 537 (2009).   "In a criminal prosecution, the State may *** obtain review of an order that suppresses evidence where the State certifies that the suppression substantially impairs the State's ability to prosecute the case."   (Emphasis omitted.) *K.E.F.*, 235 Ill. 2d at 537.   But that rule cannot come into play unless the order at issue is one that actually has the effect of suppressing evidence.   *K.E.F.*, 235 Ill. 2d at 537.   We decide *de novo* whether a trial court's evidentiary ruling qualifies under Rule 604(a)(1) as a reviewable suppression ruling.   See *K.E.F.*, 235 Ill. 2d at 538 ("In making th[e] determination [of reviewability], we do not defer to the parties or the circuit court.").

¶ 18     Review under Rule 604(a)(1) is not available for orders that affect only *how* the State may present evidence.   *K.E.F.*, 235 Ill. 2d at 538-40.   Thus, for instance, an order requiring the State to prove through live testimony, not merely a lab report, that a seized item contained a controlled substance was not reviewable under Rule 604(a)(1); that order merely affected how the State could introduce the forensic evidence.   *K.E.F.*, 235 Ill. 2d at 538 (analyzing the holding in *People v. Truitt*, 175 Ill. 2d 148, 152 (1997)).

¶ 19     Here, the trial court made clear that it would not allow the State to present evidence of the day-to-day aspects of the victim's recovery.   That amounted to a suppression of evidence.

¶ 20     Further, the court barred the State from eliciting testimony from the victim about her current impairments unless the defense opened the door to the issue.   The court would not even permit the State to ask the victim about struggles she might have with memory *while testifying* unless the defense opened the door.   This ruling had the effect of barring some evidence entirely.

Moreover, the court's qualification that the evidence might be admissible if the defense opened the door does not make the ruling something less than an exclusion. The opposing party's actions can always open the door to evidence permitted or excluded by a court's ruling on a motion *in limine*. See *People v. Drum*, 321 Ill. App. 3d 1005, 1008-09 (2001) (the party that sought to exclude evidence may, by its actions at trial, " 'open the door' to the admission of excluded evidence, and the court is always permitted to reconsider its ruling on a motion *in limine* based on the circumstances of the trial).

¶ 21    As both parts of the court's ruling on the motion *in limine* had the substantive effect of suppressing evidence, we thus have jurisdiction to address the merits of the entire ruling under Rule 604(a)(1).

¶ 22        C. Whether the Court Abused Its Discretion in Barring Miller's Testimony

¶ 23    The State asserts that the exclusion of Miller's testimony was an abuse of discretion. It concedes that the trial court allowed it "to cover the *nature* of the victim's injuries; namely that the victim suffered a stab wound, a concussion, and a traumatic brain injury." (Emphasis in original.) But it contends that the court erred when it "completely prohibited the State from eliciting testimony regarding the *extent* of [her] injuries; namely, the lasting effect of the victim's injuries that continued to hinder her physical function and memory." (Emphasis in original.)

¶ 24    The State argues that it was arbitrary for the trial court to "exclude any and all evidence of the victim's slow recovery." Citing *People v. Brown*, 2015 IL App (1st) 131873, ¶ 17, for the proposition that "not every assault involving serious bodily injury will necessarily support an inference that the assailant intended to kill the victim," the State contends that evidence of the lasting impact on the victim's health is necessary to prove the victim's intent to kill. It suggests that, "in light of the victim's normal tests, the extent of the victim's injuries was even more relevant

and probative of the severity of the beating defendant inflicted." Further, "[i]f the jury only heard that the victim suffered a traumatic brain injury and was out of a coma in a day, the jury would almost certainly be left with the false impression that the victim's injuries were fleeting."

¶ 25 Although the State frames the issue on appeal as a challenge to the exclusion of Miller's testimony, its argument rests in large part on an unstated premise that the court's ruling limited Dr. Otto from testifying to the full scope of the victim's injuries. We deem that premise to be incorrect. Thus, before we explain why we hold that the trial court did not abuse its discretion as to Miller's testimony, we consider what limits the court placed on Dr. Otto's testimony.

¶ 26          1. *The Scope of the Court's Ruling Regarding Dr. Otto's Testimony*

¶ 27 The State argues that the trial court's order barring Miller's testimony left it with no way to introduce evidence of the full extent of the victim's injuries. That argument assumes that it would not be able to introduce such evidence through Dr. Otto's testimony. The State implies limits on his testimony that are not present in the trial court's ruling. The court modified its original order, stating, "[i]f [Dr. Otto's] findings are grievous or traumatic brain injury, you can have [him] testify to that," and "[if] part of that diagnosis was based on subsequent events," the court would allow Dr. Otto to provide that further explanation. We thus read the modified order to permit Dr. Otto to consider whatever aspects of the victim's condition an expert would consider in diagnosing the nature of her injuries from the June 21, 2018, attack, without regard for how long after the attack those aspects of her condition were apparent.

¶ 28 Moreover, we do not read the court's order to limit Dr. Otto's testimony to an umbrella diagnosis such as "traumatic brain injury." We take the order to permit Dr. Otto to describe the nature and extent of the victim's injuries in whatever terms are considered reasonable within his field of expertise.

¶ 29    To the extent that the trial court's comments could be taken to bar Dr. Otto from considering medically appropriate information in arriving at an opinion on the nature of the victim's injuries, we modify the order to permit him to do so.

¶ 30        2. *The Propriety of the Court's Ruling as Such Barring Miller's Testimony*

¶ 31    Turning to the merits of the court's ruling on Miller's testimony, we conclude that its ruling was not an abuse of its discretion.   The court excluded Miller's proposed testimony because its probative value—which it deemed to be slight—was outweighed by its prejudicial effect.   Under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) a court may exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."   We review a trial court's balancing of probative value and prejudicial impact for an abuse of discretion.   *People v. Martinez*, 2019 IL App (2d) 170793, ¶ 79.

¶ 32    Initially, we agree with the trial court that the risk of unfair prejudice from the kind of testimony that the State sought to elicit from Miller was extremely high.   As the court suggested, a jury will naturally be moved by evidence of a victim's suffering and likely tempted to punish a defendant for causing the suffering rather than to make a dispassionate judgment about the sufficiency of the evidence.   Thus, for the court to have abused its discretion in excluding Miller's proposed testimony, the probative value of that testimony would need to be considerable. That is not the case here.

¶ 33    Miller's proposed testimony was of marginal relevance.   To be sure, evidence of the severity of an attack will almost surely be relevant to whether the attacker intended to kill the victim.   Further, as the State argues, the extent of a person's injuries will *generally* be highly probative of the severity of a physical attack of which that person is the victim.   But the State implies that the lasting impairment an injury causes is probative of the severity of the battery that

caused the injury. We conclude that, at least in a case such as this one where the injury at issue is neurological, the relationship between the degree of impairment that results from a battery and the severity of the attack is largely a matter for expert testimony.

¶ 34     Under Illinois Rule of Evidence 702 (eff. Jan. 1, 2011), "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education[ ] may testify thereto in the form of an opinion or otherwise." We lack the expertise to say the degree to which the extent of neurological impairment correlates to the violence of an attack; rather, an appropriately qualified physician or surgeon *could* address how the extent of permanent impairment is likely to relate to the violence of the attack. Such a witness can necessarily rely on and interpret lay descriptions of the victim's level of functioning where that kind of information is reasonably relied upon by experts in the relevant field. See Ill. R. Evid. 703 (eff Jan. 1, 2011) (the facts or data an expert relies on in forming an opinion need not be admissible if they are of a type reasonably relied upon by experts in the particular field). As we previously held, the court did not bar the State from presenting such evidence.

¶ 35     Miller, as a lay witness, could not offer an opinion about how what she observed of the victim's recovery related to the violence of the attack on her. Her testimony, to have any relevance, would require the jury to speculate about that relationship, making it of little probative value.

¶ 36                    3. *Specific Cases on which the State Relies*

¶ 37     The State cites a series of cases for the proposition that evidence of the extent of a victim's injuries is relevant to show the attacker's intent to kill. None of those cases negate the basis on which we conclude that it was proper for the court to bar Miller's testimony.

¶ 38    The State cites *People v. Williams*, 165 Ill. 2d 51 (1995), for the proposition that evidence of severe injury is relevant to show a defendant's intent to kill.   Although we agree with that general principle, we do not—for the reasons just given—agree that Miller's testimony, therefore, should have been allowed.

¶ 39    In *Williams*, the court found overwhelming proof of the defendant's intent to kill in evidence that the victim had had his head repeatedly slammed against the floor and had his life saved only by timely medical intervention.   *Williams*, 165 Ill. 2d at 65.   *Williams*, however, did not address the admissibility of evidence and thus the case sheds no light on the balance between probative value and unfair prejudice to the defendant upon which admissibility questions depend. A jury likely can grasp without guidance how gross injuries relate to the degree of violence involved in an attack.   But, as we noted, understanding how the degree of neurological deficit relates to the violence of an attack surely requires "technical, or other specialized knowledge [that] assist[s] the trier of fact to understand the evidence"   (Ill. R. Evid. 702 (eff. Jan. 1, 2011)).

¶ 40    Likewise fruitless is the State's reliance on the court's comment in *People v. Rolfe*, 353 Ill. App. 3d 1005, 1013 (2004), that the "shocking injuries and the ferocity with which the defendant inflicted those upon his victims were such that no sane adult would have engaged in such brutality or inflicted such injuries unless he intended to extinguish their lives."   The admissibility of evidence was not at issue in *Rolfe*.   We do not dispute that the nature of an attack and the extent of injuries inflicted are relevant to the question of intent to kill.   It is a far different question, however, what manner of attack would cause a particular deficit.   A qualified expert should be allowed to opine on that issue, as the trial court recognized.   However, the State is not entitled to invite the jury to speculate on that issue through lay testimony such as Miller's.

¶ 41　The State also cites the remark in *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011), that "there is no rule that requires the State to present a watered-down version of events simply because otherwise highly probative evidence is unflattering to defendant." The comment is inapposite. Miller's testimony would *not* be highly probative.

¶ 42　In its reply brief, the State points to *People v. Viramontes*, 2017 IL App (1st) 142085, as supporting its position.

¶ 43　In *Viramontes*, the court held that evidence relating to a victim's injuries was sufficient to permit the jury to conclude that the defendant intended to kill that victim. In so concluding, the court noted that the defendant "delivered a violent hit"—administered with a baseball bat—to the back of one victim's head. *Viramontes*, 2017 IL App (1st) 142085, ¶¶ 1, 62. This blow "opened a large laceration on her head causing a great deal of bleeding." *Viramontes*, 2017 IL App (1st) 142085, ¶ 62. Further, "[t]he emergency room physician later opined that [the victim] suffered a severe traumatic brain injury." *Viramontes*, 2017 IL App (1st) 142085, ¶ 62. In this analysis, the *Viramontes* court added facts not mentioned in the background section, namely that the "traumatic brain injury caused seizures in the hospital," that the victim "ha[d] yet to regain her peripheral vision or the ability to balance properly," and that, at the time of trial, she still "suffer[ed] with severe migraine headaches." *Viramontes*, 2017 IL App (1st) 142085, ¶ 62. The appeal did not challenge the admissibility of any of this evidence.

¶ 44　The decision in *Viramontes* is ambiguous on whether lay testimony about the victim's long-lasting symptoms is relevant to intent to kill. The decision does not make clear whether it was the medical witness or the victim who testified about the symptoms that the court mentioned for the first time in its analysis. As we have explained, appropriate expert testimony relating long-lasting symptoms to the character of an attack is relevant, but testimony by a lay witness is much

less clearly relevant. The *Viramontes* court did not consider this difference. *Viramontes* thus does not support the State's position.

¶ 45                    D. Whether the Court Erred in Limiting the Victim's Testimony

¶ 46    The State argues that the court abused its discretion by prohibiting it from eliciting testimony from the victim concerning her problems with memory unless defense questions open the door. The State suggests that, given the significance ascribed to a witness's manner of testifying and memory in the jury instructions (see Illinois Pattern Jury Instructions, Criminal, No. 1.02 (approved July 18, 2014)) and what it contends will be her obvious difficulties with memory, the court's ruling that the State could not elicit testimony about those difficulties is a separate abuse of discretion. The State contends that it was illogical for the court to limit the State's ability to address the victim's memory deficit as that deficit becomes apparent as she testifies.

¶ 47    We agree with the State. There is no reasonable basis to bar the State from asking the victim to testify about the limitations on her memory—provided that those questions directly relate to her ability to recall relevant evidence or help the jury to understand evident impairment. Such a bar places the State in the untenable position of having to question a victim who has obvious impairments that relate to her capacity as a witness yet not being able to ask her about the nature of those impairments. If, as the State suggested, the victim's deficient memory will be obvious, it will be confusing to the jury if that is not explained. At worst, it could lead the jury to speculate that the victim was disabled before the attack. Thus, the State should be permitted to elicit the victim's testimony about her ability to remember and observe without regard to whether the defense does anything to open the door to such questions.

¶ 48    To be clear, none of our holdings here should be interpreted to prevent the trial court from limiting questions that are directed merely to eliciting the jury's sympathy or which are otherwise improper.    Further, *all* rulings on motions *in limine* "are, by their very nature, interlocutory and made based upon an expectation of the evidence that will be presented at trial."    *People v. Zimmerman,* 2018 IL App (4th) 170695, ¶ 147.    The trial court thus can and should revisit such rulings as needed as the trial progresses and the parties develop their evidence.    *Zimmerman*, 2018 IL App (4th) 170695, ¶ 149.

¶ 49    For the reasons stated, we affirm the court's partial grant and modification of defendant's motion *in limine*: (1) the State may present the diagnosis of defendant's injuries and the fact that she was in a coma; (2) the State may not call Miller to testify to the victim's day-by-day recovery; and (3) the State may call Dr. Otto to testify to aspects of Miller's day-by-day recovery if relevant to his diagnosis of the victim's injuries.    We modify the court's order to allow the State to elicit testimony from the victim concerning her impairments as they relate to her capacity as a witness, as noted above.

¶ 50                                III. CONCLUSION

¶ 51    The judgment of the circuit court of Lake County is affirmed as modified, and we remand the cause with directions.

¶ 52    Affirmed as modified.