NOTICE

Decision filed 08/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210265-U

NO. 5-21-0265

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-CF-1232 |
| | ) | |
| DOMINIC COMBS JR., | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order denying the State's motion to admit certain statements allegedly made by the defendant on the night of the offense is affirmed where the prejudicial effect of the statements substantially outweighs the probative value. The court's order denying the State's motion to admit other-crimes evidence is reversed where the evidence will not be offered to show the defendant's propensity to commit crimes but to show absence of mistake or his intent, and the prejudicial effect of the evidence does not substantially outweigh its probative value.

¶ 2    The State appeals from an order of the circuit court of St. Clair County denying the State's notice of intent, which sought to admit certain statements allegedly made by the defendant, Dominic Combs Jr., on the night of the offense and other-crimes evidence in the form of the defendant's previous Tennessee convictions for aggravated assault resulting

1

in a death. For the reasons that follow, we affirm the court's order concerning the defendant's alleged statements and reverse the order regarding the other-crimes evidence.

¶ 3                                    I. BACKGROUND

¶ 4      On August 11, 2019, at 10:33 a.m., East St. Louis police officers responded to a traffic crash; the report indicated that a red Chevrolet Impala had crashed into a stop sign. When officers arrived on the scene, they discovered that the driver, Keisha Tolson, was deceased. She had been shot twice in the right side of her neck at close range. Witnesses identified the defendant as one of the last people seen with Tolson. In his August 13, 2019, police interview, the defendant acknowledged that he was with Tolson but claimed he returned to his residence by 12:30 a.m. where he slept on the couch and woke up the next morning at 11 a.m. However, a video from his cell phone showed that he was awake at 4:30 a.m., and a person wearing clothing similar to what he was wearing in that video was captured by a surveillance camera at the crime scene.

¶ 5      In his August 15, 2019, interview, the defendant stated that he was not near the scene, he went home after "freaking" with Tolson, and he did not see her with a weapon. However, he eventually claimed that Tolson began to "speak of the devil," and, while driving, she pulled a black gun on him and tried to rob him of drugs. He stated that, during the tussle over the gun, it discharged twice, once with Tolson's finger on the trigger, and the other when he gained control over the gun. He then got scared, exited the vehicle, threw the gun in some weeds, threw his hoodie in a field, and burned his pants.

¶ 6      That same day, the State charged the defendant with one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2018)), alleging that he, without lawful justification and with

2

the intent to kill or do great bodily harm to Tolson, shot her in the neck with a firearm, which caused her death. The State's theory of the case was that the defendant was in a vehicle with Tolson, and he was angry about losing a $40 bag of cocaine and that she was smoking crack in front of her children, so he pulled a gun on her, shot her, and then took her drugs.

¶ 7    On July 19, 2021, the defendant filed a notice of affirmative defense pursuant to section 7-1 of the Criminal Code of 2012 (*id*. § 7-1). The defendant's theory was that his actions were justified as self-defense in that Tolson pulled a gun on him and tried to rob him of drugs. During his struggle with her, the gun discharged, and Tolson was shot.

¶ 8    Also, on July 19, 2021, the State filed a notice of intent to introduce the defendant's prior felony convictions for impeachment purposes. Specifically, the State sought to introduce the following convictions: retail theft in St. Clair County (case No. 11-CM-5166) on November 10, 2011; unlawful possession of a controlled substance in St. Clair County (case No. 13-CF-1899) on February 13, 2014; and two counts of aggravated assault resulting in death in Montgomery County, Tennessee (case No. 63CC1-2017-CR-113) on November 13, 2017.

¶ 9    On August 2, 2021, the State filed a notice of intent to introduce other-crimes evidence. Specifically, the State contended that the defendant's previous Tennessee convictions were sufficiently similar to the charged offense to show lack of mistake, the defendant's intent, and the defendant's *modus operandi* to rebut his affirmative defense. The State also sought to introduce evidence of the following statements that the defendant allegedly made to certain individuals on the night of the offense: (1) he was "going to kill

a girl"; (2) he told another female, "I will kill you"; (3) he said he wanted to "kill someone" without mentioning who he was talking about; and (4) he was talking about shooting things in the head. Although the State acknowledged that these witnesses could not testify that the defendant was threatening Tolson in making these statements, it argued that the fact that he made statements of a threatening nature and about killing on the night of the offense was relevant to show that he was not acting in self-defense but had intent to kill.

¶ 10    At the August 2, 2021, pretrial hearing, the trial court found that the defendant's alleged statements on the night of the offense and his Tennessee convictions were not admissible at trial as the prejudicial effect outweighed the probative value. Regarding the Tennessee convictions, the court noted that, although it could see the State's position as to the probative value and absence of mistake or *modus operandi*, it did not believe that the probative value outweighed the prejudicial effect the convictions would have on the jury if admissible for those purposes. On August 31, 2021, the State filed an affidavit stating that the orders substantially impaired its ability to prosecute its case and a timely notice of appeal.

¶ 11                    II. ANALYSIS

¶ 12                    A. Jurisdiction

¶ 13    Before turning to the merits of the State's appeal, we must first address an argument raised by the defendant that we lack jurisdiction to address the merits of the State's interlocutory appeal regarding the State's initial argument, *i.e.*, that the trial court abused its discretion in prohibiting the introduction of the defendant's alleged statements on the night of the offense. The determination of an appellate court's jurisdiction is an issue of

4

law that we evaluate under the *de novo* standard of review. *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 15.

¶ 14 In a criminal prosecution, the State has a limited right to appeal from an order that has the substantive effect of, among other things, the suppression of evidence. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). Under Rule 604(a)(1), the State may appeal a pretrial suppression order when it certifies to the trial court that the order substantially impairs its ability to prosecute the case. *In re K.E.F.*, 235 Ill. 2d 530, 537 (2009). However, before this rule is applicable, the order must actually suppress evidence. *Id.* In making that determination, the appellate court must make its own assessment, looking at the substantive effect of the order rather than its form. *Id.* at 538. Where the trial court's ruling has left an avenue open for admission of the evidence in question in a different form, but the State has declined to avail itself of that option, then the court's ruling is not considered an order that has the substantive effect of suppressing evidence and, thus, is not appealable under Rule 604(a)(1). *In re K.E.F.*, 235 Ill. 2d at 540-41.

¶ 15 For example, in *In re K.E.F.*, our supreme court concluded that the trial court's finding that the use of a recording was inadmissible unless the State questioned the live witness about the pertinent events was not a suppression of evidence. *Id.* at 539-40. In so deciding, the supreme court noted that the admissibility of the evidence in question was entirely within the State's control in that it had the option of presenting live testimony to secure the admission of the information it sought to introduce, but it declined to pursue that option. *Id.* at 540. Thus, the court found that the sole impact of the order was on the means

5

by which the information was to be presented rather than a suppression of the evidence. *Id*.

¶ 16    Here, the defendant contends that the trial court's order with regard to his alleged statements made on the night of the offense was not a suppression of the evidence. The defendant noted that, although the State sought to introduce evidence of the defendant's intent through his statements about killing, it was granted permission to introduce other evidence of his intent. In particular, the State was allowed to present specific testimony from Maria Webb that the defendant claimed that he shot Tolson because she was smoking crack in front of her children. The defendant also noted that the State was given permission to introduce testimony from other witnesses who would testify that the defendant was upset about losing his drugs. Because the State was permitted to introduce evidence of the defendant's intent through other means, *i.e.*, the other testimony about his reasons for being upset on the night of the incident, the defendant argues that the court's order solely impacted the manner in which the State would have to prove intent and is not a suppression of that evidence. We disagree with the defendant's position.

¶ 17    As previously noted, the State sought to introduce this evidence to demonstrate that the defendant was not acting in self-defense on the night of the offense and instead intended to kill Tolson. Even though the State was allowed to present other evidence purporting to explain the reasons why the defendant was upset on the night of the offense, the trial court's order had the effect of prohibiting any evidence of the fact that the defendant was allegedly making statements that night about wanting to kill someone, killing a girl, and shooting things in the head. Unlike *In re K.E.F.*, the defendant was not allowed to present this

6

testimony in another form. Thus, we find that the court's order was a suppression of this evidence, and we have jurisdiction over this order pursuant to Rule 604(a)(1). Thus, we now turn to the merits of the State's appeal.

¶ 18            B. Testimony About the Defendant's Alleged Statements

¶ 19    The State first contends that the trial court abused its discretion in denying its request to introduce the defendant's alleged statements on the night of the offense. Specifically, the State argued that the following witnesses would testify as follows. Ray Morris Jr. would testify that the defendant stated that he was going to kill a girl and that the defendant told another female, "I will kill you." Demarcus Buford would testify that the defendant was talking about shooting things in the head. Skylar Hawthorne would testify that the defendant made statements about wanting to kill someone without mentioning who he wanted to kill. Although the State acknowledged that these witnesses would not testify that the defendant threatened Tolson, the State argued that the testimony that the defendant made threatening statements about killing close in time to the offense was relevant to demonstrate his intent, *i.e.*, that he had intent to kill and was not acting in self-defense.

¶ 20    All relevant evidence is admissible unless otherwise provided by law. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 33. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011); *Pike*, 2016 IL App (1st) 122626, ¶ 33. However, a court may exclude relevant evidence if the prejudicial effect of the evidence substantially outweighs its probative value. *People v. Aguilar*, 265 Ill. App. 3d 105, 113 (1994). A trial court may

7

reject evidence on relevancy grounds if that evidence is remote, uncertain, or speculative. *People v. Morgan*, 197 Ill. 2d 404, 456 (2001).

¶ 21   Generally, it is the function of the trial court to determine the admissibility of evidence, and a reviewing court will not disturb that decision absent an abuse of discretion. *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000).  An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.  *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 22   Here, the defendant argues that it was reasonable for the trial court to exclude cumulative evidence of other generalized, unspecific conduct that could not be connected to Tolson and could overpersuade the jury to convict him because they would view him as a bad person, rather than because he was guilty of the charged crime.  In making this argument, the defendant notes that the court allowed the State to demonstrate his intent through other evidence, such as evidence that he was mad at Tolson for smoking crack with her children in the car, so he shot her; he was seen with a 9-millimeter firearm, the same caliber recovered from Tolson's body; and, that night, he was using drugs and was upset about losing his drugs, which gave him a motive to kill Tolson and take her drugs. We find that the court did not abuse its discretion in excluding this particular evidence.

¶ 23   Although the defendant's alleged statements were made on the night of the offense, they were generalized statements that he wanted to kill someone, specifically a female, and wanted to shoot things in the head.  There was no connection between the statements that were allegedly made and Tolson, other than that he wanted to shoot a female.  In other words, the testimony from these witnesses would not demonstrate that the defendant

8

specifically made threatening statements directed at Tolson, which the State concedes, or had the intent to kill her. Thus, the trial court could have reasonably found that generalized statements that were not connected to Tolson would be more prejudicial than probative. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the prejudicial effect of this testimony substantially outweighed its probative value.

¶ 24                              C. Other-Crimes Evidence

¶ 25    The State next contends that the trial court abused its discretion in denying the admission of other-crimes evidence on the grounds that its prejudicial effect outweighed its probative value. Specifically, the State sought to introduce the defendant's Tennessee convictions for two counts of aggravated assault resulting in death to demonstrate the defendant's *modus operandi*, lack of mistake, and intent. In that case, on May 12, 2016, Clarksville police officers were dispatched to a residence where they discovered James Tyler Wood dead from multiple gunshot wounds to the head and multiple gunshot wounds to the torso. Another male, Cuong Nguyen, was taken to the hospital and later died from a gunshot wound to the head; he was also shot in the arm. It was later determined that Nguyen was missing several personal items. Inside the residence, the officers found money, drugs, and drug paraphernalia; there were witness statements reporting that Wood sold drugs. Officers also found .25-caliber and .32-caliber discharged cartridge casings and projectiles.

¶ 26    A witness, Dorian Toliver, stated that Wood was waiting for someone to purchase one or two ounces of weed. When Toliver arrived at Wood's home, he heard someone telling a person to leave and heard gunshots. Two black males then exited the house, and

9

Toliver heard one of them state, "They tried to rob us." The two males then got into a white Cadillac, which was confirmed by neighborhood surveillance. On May 4, 2016, officers received a tip that Gary Mathis tried to purchase a gun from Easy Pawn. He was driving a white Cadillac and was with a black male, which was confirmed by surveillance video footage from the business. After further investigation, Mathis became a person of interest in the shooting.

¶ 27 On May 24, 2016, the defendant was arrested for drug possession in East St. Louis. U.S. Marshals determined that the defendant matched the description of the person seen in the Easy Pawn surveillance with Mathis. Although the defendant admitted to being with Mathis at Easy Pawn, he denied involvement in or knowledge of the double murder. However, he eventually admitted to his involvement. He stated that he gave Mathis $200 to purchase weed, Mathis used his cell phone to call someone to purchase the weed, and they then went to the residence. When they arrived, Mathis went inside the residence with a firearm, and the defendant remained in the vehicle. Approximately five minutes later, the defendant heard gunshots and went inside. He observed Mathis in the kitchen with a man, and another man was coming toward the front door with a gun. The defendant was able to take the gun from the man and shot him three times. As the defendant left, he heard more gunshots. He and Mathis then ran to the white Cadillac, and they saw a black male outside. Mathis told the male that the individuals in the house tried to rob them. The defendant then gave the gun to Mathis, who said he would get rid of it. The defendant was originally charged with two counts of homicide but ultimately pled guilty to two counts of aggravated assault resulting in death.

10

¶ 28    Other-crimes evidence is not admissible to show a defendant's propensity to commit a crime. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). However, evidence of other crimes is admissible for any purpose other than to show defendant's propensity to commit crimes, such purposes include motive, intent, identity, lack of mistake, and *modus operandi*. *Id*. at 364-65. This is codified in Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), which states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by [certain statutes]. Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Even when the evidence is offered for a permissible purpose, courts generally prohibit the admission of other-crimes evidence if its prejudicial effect substantially outweighs its probative value. *Illgen*, 145 Ill. 2d at 365.

¶ 29    To be admissible, the other-crimes evidence must have some threshold of similarity to the charged crimes. *People v. Donoho*, 204 Ill. 2d 159, 184 (2003). In most cases, general areas of similarity are sufficient for other-crimes evidence to be admissible for purposes other than propensity. *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 36. As the factual similarities between the two crimes increase, so does the relevance or probative value of the other-crimes evidence. *People v. Bartall*, 98 Ill. 2d 294, 310 (1983). However, when the evidence is being used to establish defendant's *modus operandi*, there must be a higher degree of similarity between the facts of the charged offense and other offenses. *Littleton*, 2014 IL App (1st) 121950, ¶ 36. In particular, the State must show a high degree

11

of identity between the facts of the charged crime and the other offense; they must share distinctive common features as to earmark both acts as the acts of the same person. *Id*.

¶ 30 *Modus operandi* refers to a pattern of criminal behavior that is so distinct that the other crime is recognized as the work of the same person. *People v. Kimbrough*, 138 Ill. App. 3d 481, 486 (1985). Thus, there must be a clear connection between the other crime and the crime charged which creates a logical inference that if defendant committed one of the acts, he may have committed the other act. *Id*. However, even where the evidence is offered to prove *modus operandi*, there will be some differences between the crimes. *Id*. at 487.

¶ 31 Once the trial court finds some relevance in the other-crimes evidence, it must conduct a balancing test to determine whether its probative value is substantially outweighed by its prejudicial effect. *People v. Pikes*, 2013 IL 115171, ¶ 11. The determination of whether the other-crimes evidence should be admissible is not dependent om whether the evidence is prejudicial, as the evidence is unquestionably prejudicial to a defendant. *People v. Perez*, 2012 IL App (2d) 100865, ¶ 45. Instead, the concern is that the prejudice is undue or unfair or of the type that would lure the factfinder into finding defendant guilty on a different ground than from the specific proof presented on the charged offense. *People v. Maya*, 2017 IL App (3d) 150079, ¶ 66.

¶ 32 We review the admission of other-crimes evidence for an abuse of discretion. *Donoho*, 204 Ill. 2d at 182. As noted above, an abuse of discretion is found where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's view. *Id*.

12

¶ 33    Here, the State sought to introduce the defendant's Tennessee convictions to demonstrate an absence of mistake and as evidence of the defendant's intent and *modus operandi* to rebut his claim of self-defense.  In seeking to admit this evidence, the State contends that the more often the defendant has to kill someone in a drug transaction gone wrong, the less likely it is that he acted without criminal intent.  In ruling that this evidence was inadmissible, the trial court indicated that it could see the State's position but ultimately found that the probative value was outweighed by the prejudicial effect the prior convictions would have on the jury if admitted into evidence.  We find that the court's decision was an abuse of discretion.

¶ 34    Here, the defendant contends that he shot Tolson in self-defense after she pulled a gun on him and tried to steal his drugs, and the gun was fired in the ensuing struggle.  He made a similar claim of self-defense in the Tennessee offense that resulted in his convictions.  Also, we note that the Tennessee convictions occurred on November 13, 2017, while the offense in question here occurred on August 11, 2019; therefore, the two offenses are not so remote in terms of time.  Further, the present case and the Tennessee convictions share several factual similarities: (1) both involve drugs, (2) the defendant initially denied any involvement in the shootings and denied even being present, (3) the defendant eventually admitted to being present in both cases, (4) the defendant claimed that the victims each pulled a gun on him, (5) the defendant claimed that he was able to gain control over the guns, (6) the defendant claimed that he shot the victims in self-defense, (7) the victims were shot in the head or neck, and (8) the defendant fled and got rid of evidence instead of calling the police.

13

¶ 35    Although there are some differences between the two cases, courts have recognized that some dissimilarity between the crimes will always be apparent. *People v. Wilson*, 214 Ill. 2d 127, 140 (2005).  Because of the high degree of factual similarities between the present case and the Tennessee convictions, we conclude that the other-crimes evidence is admissible to demonstrate an absence of mistake or intent.  As factual similarities increase between the two offenses, so does the relevance or probative value.  *Id*. at 142.  Thus, we find that the prejudicial effect of this other-crimes evidence was not substantially outweighed by its probative value.  Moreover, we believe that the prejudicial effect of the other-crimes evidence can be minimized by the issuance of a limiting instruction. Accordingly, we conclude that the trial court abused its discretion in finding that this other-crimes evidence was inadmissible.

¶ 36                              III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County in part and reverse in part.


¶ 38    Affirmed in part and reversed in part.